531 F.2d 1162
 91 L.R.R.M. (BNA) 2929, 41 A.L.R.Fed. 301,
78 Lab.Cas. P 11,327
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
MILK DRIVERS & DAIRY EMPLOYEES, LOCAL 338, INTERNATIONAL
BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN
AND HELPERS OF AMERICA, Respondent.
 No. 700, Docket 75--4218.
 United States Court of Appeals,
Second Circuit.
 Argued March 3, 1976.
Decided March 12, 1976.
 
 John D. Burgoyne, Washington, D.C. (John S. Irving, Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., on the brief), for petitioner.
 Stanley M. Berman, New York City (Cohen, Weiss & Simon, New York City, on the brief), for respondent.
 Before KAUFMAN, Chief Judge, and SMITH and ANDERSON, Circuit Judges.
 IRVING R. KAUFMAN, Chief Judge:
 
 
 1
 Basic to the National Labor Relations Act is an overriding policy to insulate employees' positions from their union activities. The Act's provisions were designed to permit workers to exercise freely the right to join unions, to be active or passive members, or to abstain from joining any union at all without imperiling their right to a livelihood. Radio Officers' Union v. N.L.R.B., 347 U.S. 17, 39--42, 74 S.Ct. 323, 335337, 98 L.Ed. 455, 476--478 (1954). The issue we must resolve is whether this clear statutory purpose is contravened by a clause in a collective bargaining agreement providing that the union's shop steward shall be deemed the most senior employee in the plant even if other workers have accumulated far more years of service.
 
 I.
 
 2
 The facts underlying this case have been stipulated and may be briefly summarized. The Milk Drivers & Dairy Employees Union, Local 338 (the Union) maintains collective bargaining agreements with eighteen dairies in the New York metropolitan area. All of its bargaining agreements have, since 1937, contained provisions affording the Union's steward 'super-seniority' over all other workers in the plant. The steward is the Union's official representative within the plant, and his selection, under the terms of the bargaining agreement, is totally within the unfettered discretion of the Union. He bears initial responsibility for processing workers' complaints and ensuring that employers and workers abide by union rules.
 
 
 3
 The steward's perquisites are rather more extensive and tangible than his duties. Under the union contract, the steward is automatically primus inter pares within the seniority system, which determines not only the order of layoff and recall, but the allocation of numerous and significant on-the-job benefits. The employee deemed most senior may, for example, choose the most lucrative delivery routes as they become vacant. Seniority also controls the assignment of vacation time, work shifts, and days off.
 
 
 4
 The parties have stipulated to a specific incident which graphically highlights the operation of the super-seniority provision. In December, 1972, a particularly profitable milk delivery route became vacant in the plant of Dairylea Cooperative, Inc. Howard Rosengrandt, the steward, applied for the route, as did Peter Daniels, a driver who had worked more than twenty-four years longer than Rosengrandt. The company was, by the terms of the bargaining agreement, required to assign the route to the applicant with the greatest seniority. Since Rosengrandt, as steward, was considered most senior, he received preferential treatment in winning the unusually remunerative route.
 
 
 5
 Because of this incident, the Board issued a complaint against the Union and Dairylea, charging that the 'super-seniority' clause, and its application to Rosengrandt, contravened the National Labor Relations Act.[1] The parties joined in waiving an evidentiary hearing and submitted the case, on agreed facts, directly to the Board. The Board, however, was unwilling to accept the stipulation and remanded the case for an evidentiary hearing to shed light on the purpose behind, operation of, and justification for the clause. Despite this, the parties again waived hearing, and stipulated that there was no evidence available concerning the intent underlying the original adoption of the provision in 1937. They submitted the case once more to the Board. The Board considered the case en banc and decided that the clause was unlawful.[2] It found that Dairylea had violated §§ 8(a)(1) and (3) of the Act, 29 U.S.C. §§ 158(a)(1) and (3), and that the Union had contravened §§ 8(b)(1)(A) and 8(b)(2), 29 U.S.C. §§ 158(b)(1)(A) and (2). Accordingly, the Board ordered the Union and Dairylea to refrain from enforcing such clauses in the future, and to reimburse Daniels for the losses he had sustained. Dairylea agreed to comply, and the Union therefore is the sole respondent in this petition by the Board for enforcement of its order.
 
 II.
 
 6
 Section 8(b)(2) of the Act prohibits a labor union from causing an employer to violate § 8(a)(3),[3] which in turn forbids the employer
 
 
 7
 by discrimination in regard to . . . any term or condition of employment to encourage or discourage membership in any labor organization.
 
 
 8
 The Union has not undertaken the futile task of contending there was no discrimination against Daniels. The Union argues, however, that the General Counsel failed to prove that the clause in question encourages membership in the Union.[4] Of course, as the Union recognizes, the phrase 'encourage membership', as used in § 8(a)(3), encompasses not only discrimination which induces workers to join a union, but also conduct which encourages employees to be 'good' union members, to support and assist the union, or to participate in union activities. Radio Officers' Union v. N.L.R.B., 347 U.S. 17, 39--42, 74 S.Ct. 323, 335--337, 98 L.Ed. 455, 476--478 (1954).
 
 
 9
 The Board found that the 'super-seniority' clause spurred ambitious workers to be 'good' union members, within the meaning of Radio Officers'. No employee would be appointed by the Union to the lucrative and desirable position of steward, the Board reasoned, unless he first proved himself 'a good, enthusiastic unionist. . . .' The Union, responds, however, that there is no evidence in the record demonstrating a relationship between the extent of a worker's union activity and his likelihood of being selected a steward.
 
 
 10
 The stipulated facts, it is true, contain no specific reference to union policies in choosing stewards. But, the Board is, as is any other trier of fact, accorded the power to draw reasonable inferences from the evidence before it. Radio Officers' Union, supra, at 48--52, 74 S.Ct. at 339--342, 98 L.Ed. at 481--483; Republic Aviation Corp. v. N.L.R.B., 324 U.S. 793, 800, 65 S.Ct. 982, 986, 89 L.Ed. 1372, 1377--1378 (1945); N.L.R.B. v. Gleason,534 F.2d 466, 474 (2d Cir. 1976). In making such inferences, the Board may draw upon--that is take 'official notice' of--its expert knowledge of labor relations and upon its 'appraisal of normal conditions about industrial establishments,' Republic Aviation, supra, 324 U.S. at 804, 65 S.Ct. at 988, 89 L.Ed. at 1380, as well as upon common experience and common sense. Radio Officers' Union, supra, 347 U.S. at 49--50, 74 S.Ct. at 340, 341, 98 L.Ed. at 481--482; Republic Aviation, supra, 324 U.S. at 800, 804, 65 S.Ct. at 986, 988, 89 L.Ed. at 1377, 1380; see also B. Schwartz, Administrative Law 364--69 (1976). The Board, needless to say, is not given carte blanche to draw 'hypothetical conjectures remote from the realities of industrial existence.' N.L.R.B. v. Local 50, American Bakery & Confectionery Workers Union, 339 F.2d 324, 329 (2d Cir. 1964) cert. denied 382 U.S. 827, 86 S.Ct. 62, 15 L.Ed.2d 72 (1965). The Board's inference, if it is not to be overturned on review, must be reasonable; if reasonable, it may stand. See Radio Officers', supra, 347 U.S. at 49--50, 74 S.Ct. at 340--341, 98 L.Ed. at 481--482; Famet, Inc. v. N.L.R.B., 490 F.2d 293 (9th Cir. 1973); 4 K. Davis, Administrative Law Treatise 139 (1958).[5]
 
 
 11
 The Board's power to infer is circumscribed by bounds of fairness as well as reasonableness. Inference and official notice must not be allowed to short-circuit the requirement of a fair hearing. It may, for example, be unfair under certain circumstances for the Board to draw an inference based in part upon its general knowledge of the labor field without giving the party a chance to introduce specific facts tending to rebut or explain away the inference. 5 U.S.C. § 556(e); see B. Schwartz, supra, at 372--74; 2 K. Davis, supra, at 394--400; cf. N.L.R.B. v. Harrah's Club, 403 F.2d 865, 873 (9th Cir. 1968).
 
 
 12
 The Board's finding of encouragement of union membership in this case was well within these parameters of reasonableness and fairness. The steward is the Union's representative in the plant selected solely by--and within the unlimited discretion of--the Union. He is responsible for reporting violations of the collective bargaining agreement by the employer, and for enforcing the rules of the Union. It is hardly unreasonable for the Board to infer, absent evidence to the contrary, that the Union will, for so sensitive a post, take care not to select someone who has not demonstrated loyalty to the Union.
 
 
 13
 Of course, union activism is, we may assume, not always the sole determinant of steward effectiveness. Yet, we think the Board was entitled to infer--using its common sense as much as its expertise--that an employee militantly opposed to the Union, or even one merely uninterested in its success, would, ceteris paribus, prove far less likely to be selected as union representative than an active union supporter. From this fact, and from the widely disparate treatment accorded stewards and nonstewards, the Board could properly infer sufficient encouragement to trigger the prohibition of § 8(a)(3). See Radio Officers' Union, supra, 374 U.S. at 46, 51, 74 S.Ct. at 338, 341, 98 L.Ed. at 480, 483.
 
 
 14
 The Union, moreover, was accorded ample opportunity to introduce evidence of its steward selection policies to rebut the Board's conclusion. It failed to do so. Indeed, the Union twice waived the opportunity for a hearing before an Administrative Law Judge, the second time after the Board had remanded for evidence on this precise question. The Board's finding therefore could hardly be said to have been made in a manner unfair to the Union.
 
 
 15
 Finally, we note that under §§ 8(a)(3) and 8(b)(2), encouragement of membership is a sine qua non of a violation, but does not, without more, establish a violation. The Union will (since there was no evidence of improper motive) prevail if it 'come(s) forward with evidence of legitimate and substantial business justifications' for the clause. N.L.R.B. v. Great Dane Trailers, 388 U.S. 26, 34, 87 S.Ct. 1792, 1798, 18 L.Ed.2d 1027, 1035 (1967).[6] The Union contended below--although it apparently abandoned this claim at oral argument before this Court--that the 'super-seniority' provisions did have such a justification: they encourage service as a steward, thereby attracting qualified persons to fill the post. But we conclude, as did the Board, that this justification is of doubtful legitimacy.[7]
 
 
 16
 We need not, however, decide whether this asserted justification should be considered sufficient. If a union finds that it must offer incentives to attract qualified stewards, it may pay a salary to the stewards, or may give them other non-job benefits. The policy of §§ 8(a)(3) and 8(b)(2) is to insulate employees' jobs from their organizational rights. Radio Officers', supra, 347 U.S. at 40, 74 S.Ct. at 335, 98 L.Ed. at 477; N.L.R.B. v. Local 50, supra, at 328. For the union to employ job-related benefits to maintain is own organization[8] would, thus, fly in the face of this statutory purpose.
 
 
 17
 The Union failed to introduce a scintilla of evidence to suggest that alternative inducements would prove insufficient to encourage capable workers to become stewards. The Union, therefore, simply did not meet its burden of proof. We would misconstrue the function of judicial review were we to attempt to fill the evidentiary void with our own speculations. Great Dane Trailers, supra, 388 U.S. at 34--35, 87 S.Ct. at 1797--1798, 18 L.Ed.2d at 1035.
 
 
 18
 Enforcement granted.
 
 
 
 [1]
 The complaint did not, however, challenge that portion of the clause which accorded stewards 'super-seniority' in the determination of layoff and recall. See note 7, infra
 
 
 [2]
 One member dissented
 
 
 [3]
 Since we sustain the Board's order under § 8(b)(2), we need not consider the Board's holding that the Union also violated § 8(b)(1)(A), which makes it an unfair labor practice for a labor organization to restrain employees in exercising their rights under the Act
 
 
 [4]
 We note that the collective bargaining agreement with Dairylea contained a valid union security clause
 
 
 [5]
 In the context of the present case, Judge Friendly's words in N.L.R.B. v. Miranda Fuel Co., 326 F.2d 172, 184 (2d Cir. 1963) (dissent), quoted with approval in N.L.R.B. v. Local 50, supra, at 328 n. 4, are especially relevant:
 The Board knows the facts of life in the labor world better than we ever can; we ought not upset its conclusion as to 'encouragement' unless we can say this is without rational basis.
 
 
 [6]
 Therefore, to prohibit the Board from concluding that a 'super-seniority' clause encourages union membership unless the General Counsel introduces detailed, specific evidence of the union's steward selection policites--evidence, we note, more readily available to the union itself--might well impose a crippling burden upon the Board. To allow the inference, on the other hand, would not automatically doom the clause. The union may prevail by rebutting the inference or by justifying the clause
 
 
 [7]
 The General Counsel did not challenge that portion of the 'super-seniority' provisions protecting stewards from layoff because, in his opinion, that preference had a legitimate and substantial justification: a union may find itself powerless to supply any real representation if it is unable to maintain the same steward continuously on the job. Obviously, this justification does not apply to the on-the-job benefits accorded the steward. The validity of the layoff 'super-seniority' provisions is, we note, not before us
 
 
 [8]
 The steward, as his role is defined by the collective bargaining agreement, may plausibly be considered to be part of the Union organization. The steward is selected by the Union, and among his duties, as described by the agreement, is
 to see whether the members of the Union and the Employer live up to the provisions of this agreement and the rules of the Union . . . The stewards shall report to the Business Agent of the Union any violations of this agreement. . . . The Superintendent shall recognize the Steward as a representative of the Union locally . . . (emphasis added)