TEAMSTERS LOCAL 20 OF the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

PRESTON TRUCKING COMPANY, INC., Respondent.

Nos. 78–1506, 78–1725.

United States Court of Appeals, District of Columbia Circuit.

Argued June 13, 1979.

Decided Nov. 21, 1979.

Linda J. Dreeben, Atty., N. L. R. B., Washington, D.C., a member of the bar of the Supreme Court of Massachusetts pro hac vice by special leave of Court, John S. Irving, Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, John D. Burgoyne, Asst. Gen. Counsel, N. L. R. B., Washington, D.C., were on brief, for petitioner in No. 78–1725 and respondent in No. 78–1506.

Ronald P. Wilder, Jr., Washington, D.C., with whom Robert M. Baptiste and Melvin Warshaw, Washington, D.C., were on brief, for petitioner in No. 78–1725.

Charles P. O'Connor, Washington, D.C., for respondent in No. 78–1725.

Before LEVENTHAL and ROBB, Circuit Judges and OBERDORFER *, United States District Judge for the District of Columbia.

PER CURIAM:

Robert Rupp is a truck driver employed by Preston Trucking Company, respondent in No. 78–1725. He is also a union steward with Teamsters Local 20, petitioner in No. 78–1506. On two occasions in 1977 he was granted a preference over Harry Chandler, his senior at the job but not a union officer, in the bidding for certain truck route as-

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

signments or "runs".[1] Under the collective bargaining agreement that existed between Local 20 and Preston, seniority was the sole criterion for determining bidding prefer-ences; steward Rupp was granted the preference over Chandler on the basis of a "superseniority" clause in the agreement which reads in pertinent part: "Stewards shall be granted superseniority for all purposes, including layoff, rehire, bidding and job preference, if requested by the Local Union . . . ."

The General Counsel of the National Labor Relations Board initiated proceedings charging both union and employer with unfair labor practices. Specifically, the General Counsel alleged that both the maintenance of the contract clause and the grant of the preference under it in this case constituted violations of sections 8(a)(1) and (3) and 8(b)(1) and (2) of the National Labor Relations Act.[2] The Administrative Law Judge nevertheless dismissed the complaints after trial. The National Labor Relations Board reversed and entered cease and desist orders and other relief against both the union and the employer. We affirm the Board's decision.

## I

■ Section 8(a)(3) of the National Labor Relations Act prohibits employers from discriminating among employees with respect to "any term or condition of employment to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a)(3) (1976). Section 8(b)(2) prohibits unions from causing or attempting to cause an employer to violate section 8(a)(3). 29

U.S.C. § 158(b)(2) (1976). It is well settled that "membership" as used in section 8(a)(3) refers not only to the employee's basic decisions as to whether to join or remain in a union, but also to his decisions as to the level of his participation in the union and in union activities. *See Radio Officers' Union v. NLRB*, 347 U.S. 17, 39–42, 74 S.Ct. 323, 335–37, 98 L.Ed. 455, 476–78 (1954). Thus, actions encouraging or discouraging service as a union steward clearly fall within the scope of section 8(a)(3). *NLRB v. Milk Drivers and Dairy Employees, Local 338*, 531 F.2d 1162, 1165 (2d Cir. 1976), *enforcing Dairylea Cooperative, Inc.*, 219 N.L.R.B. 656 (1975).

■ Employers or unions may, however, justify discrimination in the terms or conditions of employment by demonstrating a substantial and legitimate business purpose for it. *NLRB v. Great Dane Trailers*, 388 U.S. 26, 33–34, 87 S.Ct. 1792, 1797–98, 18 L.Ed.2d 1027, 1034–35 (1967). In *Dairylea Cooperative, Inc.*, a superseniority clause granting union stewards preferences with respect to layoff and recall was held to be justified as furthering the effective administration of bargaining agreements on the plant level by keeping the steward on the job. 219 N.L.R.B. 656, 658 (1975), *enforced sub nom. NLRB v. Milk Drivers and Dairy Employees, Local 338*, 531 F.2d 1162 (2d Cir. 1976). A superseniority clause extending such preferences beyond layoff and recall, however, was held to be presumptively unlawful. *Id.* Decision as to whether a proponent of superseniority has carried the burden, rebutted the presumption, and es-

---

1. Chandler and Rupp each put in bids in January and April, 1977, for a run between Toledo and central Illinois; the run was awarded to Rupp on both occasions.

2. Section 8 of the National Labor Relations Act reads in relevant part:
    (a) It shall be an unfair labor practice for an employer—
        (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [section 7]; . . .

            .    .    .    .    .    .

        (3) by discrimination in regard to hire or tenure of employment or any term or condi-

tion of employment to encourage or discourage membership in any labor organization
    .    .    .    .
    (b) It shall be an unfair labor practice for a labor organization or its agents—
        (1) to restrain or coerce   .   .   .   employees in the exercise of the rights guaranteed by [section 7]   .   .   .
        (2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section
        .    .    .    .
29 U.S.C. § 158 (1976).

tablished a proper justification depends upon the demonstration of "particular circumstances calling for steward superseniority with respect to terms and conditions other than layoff and recall." *See id.*

This case presents two questions. The first, not directly confronted in *Dairylea,* is whether a broadly phrased superseniority clause may violate section 8 by improperly or unnecessarily encouraging union activity even though the superseniority advantage is available under the contract only in a restricted number of contexts. Specifically the question is whether an "all purposes" superseniority clause violates section 8 notwithstanding the fact that superseniority awards are arguably restricted under the contract to layoff, recall, and route assignments, and that awards of superseniority for route assignments are arguably justifiable under *Dairylea.* The second question is whether there is substantial evidence in the record to support the Board's holding that the particular grant of superseniority to steward Rupp for the purpose of route assignments violated section 8. We answer both questions in the affirmative.

## II

As noted, the superseniority clause in this case granted, by its own terms, preferences "for all purposes, including layoff, rehire, bidding and job preference." Under the terms of the collective bargaining agreement, the only terms and conditions of employment beyond layoff and recall determined in any way by seniority were route assignments, where seniority was the sole

criterion, and assignments of vacation time, where seniority was one of three criteria. *See* Appendix to the Brief for the National Labor Relations Board, filed October 25, 1978, at 9–10 (opinion of the administrative law judge) (hereinafter cited as "appendix"). Nevertheless, the Board found that the general language of the clause, granting superseniority "for all purposes," was "at best . . . ambiguous," and that the clause language itself "necessarily convey[ed] to the employee the impression . . . that he can obtain special benefits only if he becomes the union steward," even assuming that no unwarranted benefits were actually extended and that none could be granted under the contract read as a whole.[3] The Board concluded that "this impression can only have the effect of encouraging union activism," and found that the union had failed to justify maintaining the contract clause in its entirety.

Petitioner union argues that the Board has here established a rule that "all purposes" superseniority clauses are illegal per se, that per se rules are generally disfavored, and that in any event such a rule is improper here because "all purposes" clauses do not infringe any employee interests. The union's arguments, however, are off the mark. In the first place, we do not necessarily read the Board's opinion as establishing a per se rule of illegality: the better reading of the Board's opinion is rather that the Board has established a presumption that "all purposes" clauses unreasonably encourage union activity by individual employees and so must be justified

---

**3.** In fact, the claim that benefits unwarranted under *Dairylea* could not be granted under the contract as a whole has little support in the record. The union did not even attempt to argue that preferential assignments of vacation time could be justified under *Dairylea,* apparently hoping to rest on the conclusions of the Administrative Law Judge on this issue. The Administrative Law Judge, finding that assignments of vacation time were "substantially in the discretion of management," with "factors [other than seniority being] given at least equal if not greater weight," *Appendix, supra,* at 10, felt himself unable to conclude that by having superseniority a union steward "necessarily

gets a preference over all other employees." *Id.* Yet even accepting his findings of fact, we could not agree with the Administrative Law Judge's conclusions since he erred as a matter of law in assuming that a preference must necessarily obtain in order to invalidate a grant of superseniority, or at least require its justification. The very language of the Administrative Law Judge's holding suggests that there could be instances under the contract where union stewards received preferences on vacation time assignments. In any event, the Board was persuaded that employees could believe that such preferences were possible.

under *Dairylea.* Even if we were to read the Board's opinion as petitioner would have us read it, however, we would still conclude that the Board had acted within its authority. A per se rule against "all purposes" superseniority clauses would not preclude a contract which extended to a steward specific superseniority benefits tailor-made "to assure" him greater accessibility to his workers and thus generally assist him to perform a role which would redound to the benefit of all employees."[4] *Compare NLRB v. Local 443, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 600 F.2d 411 (2d Cir. 1979), *enforcing* 235 N.L.R.B. No. 186 (1978). The clause here, however, was not so particularized.

In the second place, we are satisfied that the Board had ample basis in experience for its conclusion that the "all purposes" clause here creates an impression upon employees "that can only have the effect of encouraging union activism." *Appendix, supra,* at 17. We, like the Second Circuit, recognize that "the Board knows the facts of life in the labor world better than we ever can." *NLRB v. Milk Drivers and Dairy Employees, Local 338, supra* at 1165, note 5 (and references there collected). We therefore accept the Board's conclusion here that the maintenance of the contract clause violated section 8.

### III

The Board also concluded that the union had failed to justify the application of the clause in this case: the particular grant of superseniority to steward Rupp on the facts presented here. The union argued that the bidding preference was necessary to permit steward Rupp to select a route that would facilitate his handling of employee grievances by increasing his access to employees and management representatives. Although such an argument could succeed under *Dairylea,* the union failed to carry its burden of showing the necessity of the preference in the particular circumstances presented in this case. The evidence revealed that Rupp had in fact performed adequately as steward prior to the preferential grant of route assignments here at issue: only three grievances had been rejected as untimely during Rupp's tenure as steward, and two of those were from the transition period immediately following his predecessor's departure. In light of this, we cannot say that the Board's conclusion in this case was unsupported by substantial evidence in the record, or reasonable inferences drawn therefrom.[5] That conclusion is not weakened by the consideration that the record contains evidence, that the preferential assignment would have given steward Rupp additional time at the terminal, that pointed to a contrary decision, one holding that the grant of superseniority for route selection was justified. The law is clear that when the record contains substantial evidence in support of each of two different conclusions, the choice of decision is in the province of the Board. We defer to the Board's "expert knowledge of labor relations" and " 'its appraisal of normal conditions about industrial establishments.' " *NLRB v. Milk Drivers and Dairy Employees, Local 388, supra,* at 1165 (citing *Republic Aviation Corp. v. NLRB,* 324 U.S. 793, 804, 65 S.Ct. 982, 988, 89 L.Ed. 1372, 1380 (1945)).

Affirmed and enforced.

---

4. Such a rule would be tantamount to a requirement that the superseniority benefits requested by a union be set out specifically in the contract. Whether or not such a requirement is to be imposed is a matter for the Board to determine.

5. The fact that the Board's decision reversed that of the Administrative Law Judge does not, of course, alter the applicable standard of review; the ALJ's opinion is, however, a part of the record against which the substantiality of the evidence supporting the Board's decision is measured. *See Universal Camera Corp. v. NLRB,* 340 U.S. 474, 496, 71 S.Ct. 456, 469, 95 L.Ed. 456, 472 (1951).