**J.L. FOTI CONSTRUCTION CO., INC.,**
**Plaintiff-Appellant,**

**v.**

**LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, BUILDING AND CONSTRUCTION LABORERS' UNION, LOCAL NO. 310, Defendant-Appellee.**

**No. 83–3430.**

United States Court of Appeals,
Sixth Circuit.

Argued May 3, 1984.
Decided Sept. 7, 1984.

Cornelia G. Kennedy, Circuit Judge, filed separate concurring opinion.

Alan G. Ross, argued, Wickens, Herzer & Panza Co., L.P.A., Lorain, Ohio, for plaintiff-appellant.

Robert J. Rotatori, Gold, Rotatori, Schwartz & Gibbons Co., L.P.A., Susan L. Gragel, argued, Cleveland, Ohio, for defendant-appellee.

Before EDWARDS and KENNEDY, Circuit Judges, and JOINER, District Judge.*

GEORGE CLIFTON EDWARDS, Jr., Circuit Judge.

This appeal involves the validity of a unanimous arbitration award which had the result of replacing one laborer by another—the latter being one who was also the Laborers' Local Union's designated steward. The job at issue lasted for a period of 30 days. The displaced laborer was transferred by Foti to another job where he worked more hours than the steward did.

* Honorable Charles W. Joiner, U.S. District Court for the Eastern District of Michigan, sitting by designation.

Nonetheless, the case involves some of the important legal concepts of this country's labor relations law.

### The Facts

This dispute began at a construction project for an addition to the Slovene Home for the Aged. Demshar Builders, Inc. was the name of a joint venture that became general contractor for the project. The two parties to the joint venture were Demshar Builders, Inc. and Foti Construction Co. Each venturer contributed $20,000 toward the project, and they shared both costs and profits equally. The general contractor, Demshar (Venture), also sub-contracted with Foti Construction for the masonry work on the project. During the arbitration hearing, sub-contractor Foti acknowledged, "We did enter into a joint venture agreement." (Tr.Arb. p. 45.) At one time Foti employed the superintendent for the entire project on its payroll, because it had the most workers at the site. Foti agreed that it also had an obligation to employ a union steward designated by Local 310. Local 310 wanted a steward, Anthony Ricotta, at the job site before Foti had started work on the Slovene project. Ricotta then worked on the Demshar payroll until that firm completed its share of the project. The following account of the facts presented in Foti's brief to this court reveals that Foti fully staffed its work crew and then refused to accept Ricotta, the project steward, who no longer was employed by Demshar.

The facts appear to be stated with reasonable accuracy (if occasionally slanted) in appellant Foti's brief and we accept them as follows for purposes of this appeal. In what follows, there are two deletions (of Foti's legal arguments) which are marked by stars.

The facts surrounding the refusal of Foti to accept a particular steward at the job site in question are relatively simple and undisputed. Anthony Saitta, a business representative for the Union, testified that he first visited the job site in question in August and found that the only contractor performing work was Demshar. (Tr. Arb. p. 18.) At the time, Saitta requested that Demshar Construction take the assignment of a particular steward appointed by the Union. A representative of Demshar Construction indicated that there was no need then for any laborers on the job and that when such a need arose, a steward could be appointed. (Tr.Arb. p. 19.)

There was a second meeting at the job site on September 16, at which Saitta was present together with Eddy Demshar and Bob Fazio of Demshar, and Joe Foti of Foti. (Tr.Arb. p. 20.) At that time, Foti had not commenced performance and thus had no employees working at the job. Demshar was the only employer with laborers at the job. (Tr.Arb. pp. 68–69.) Knowing that within 7 to 10 days thereafter it would have laborers on the job, Foti requested that the Union wait until Foti manned the job at which time Foti would carry the steward on its payroll. * * * Foti further suggested that the steward the Union had appointed to Foti at Barshaw Chemical, a job of Foti's that was due to end within three to four days, could simply be transferred to The Slovene Home for the Aged job and in doing so, be continued on Foti's payroll. (Tr.Arb. pp. 69, 71.) Saitti rejected, or in his words 'disregarded,' this proposal and instead insisted that Demshar take the steward the union wished to assign to the job immediately. (Tr.Arb. pp. 21, 69.)

Eventually, due to the nature of the work being performed, Demshar reached a point when it temporarily had no work for laborers and made the decision to lay them off, including the steward. At the time this occurred, Foti had had The Slovene Home for the Aged job fully manned by laborers for over six weeks. (Tr.Arb. pp. 155–156.) When informed of the lay-off, Saitta insisted that Anthony Ricotta, the steward he had previously assigned to Demshar and who was laid-off along with all other laborers, be hired by Foti, and thus placed on Foti's payroll. (Tr.Arb. pp. 22, 27, 36–37.) The Union's position was not that it wanted a steward on the job, but it wanted Anthony Ricotta, a particular

steward, on the job. When Foti requested that the Union appoint one of its then current employees who was a member of the Union as steward, the Union refused to do so and insisted upon the appointment of Anthony Ricotta. * * * When Foti refused to hire the particular steward designated by the Union, because such hiring would cause the lay-off of one of Foti's employees (a member of the Union already working at the construction project), the Union engaged in an unlawful work-stoppage. As a result, Foti, on December 18, filed a Complaint and Motion for Temporary Restraining Order, Civil Action No. C81–2525, in the United States District Court for the Northern District of Ohio, Eastern Division. On December 18, the District Court issued a Temporary Restraining Order enjoining and restraining the Union, and others from, among other things, engaging in any unauthorized strike at the job site of The Slovene Home for the Aged.

By agreement of Foti and the Union, the dispute was submitted to arbitration pursuant to the collective bargaining agreement between the parties. An arbitration hearing was held on December 29.

At the outset of the arbitration proceedings, the parties stipulated that the issue before the Panel was whether, pursuant to Article III, Section 18 of the Collective Bargaining Agreement, Foti was required to hire the particular steward assigned by the business manager to The Slovene Home for the Aged job. (Tr.Arb. pp. 3–4.) The applicable clause at issue, Article III, Section 18, provides in pertinent part as follows:

A. At the discretion of the Business Manager, a Steward will be sent to all jobs when the job first starts. It shall be the responsibility of those listed for the placement of the Steward. Any person, Construction Manager, Prime Contractor, General Contractor, Brokerage Firm, Corporation or Company that employs Laborers directly or indirectly must accept the Steward sent out by the Business Manager ...

B. When there is a General Contractor or Prime Contractor, the employment of the Steward shall be their responsibility with the approval of the Business Manager ... (UX–1)

The Union contended that Foti was obligated to take the steward previously assigned to Demshar Construction, the general contractor on the job, as Demshar no longer employed laborers on The Slovene Home for the Aged job. (Tr.Arb. pp. 5–7.) In addition, the Union contended that Demshar and Foti were engaged as joint venturers on the project and, therefore, both shared an equal obligation to take the steward assigned by the Union. (Tr.Arb. p. 6; Memorandum in Support of Motion to Compel Discovery and in Opposition to Plaintiff's Motion for Protective Order, p. 8.) Thus, as set forth in the above-referenced Memorandum, the Union attempted to prove that Foti and Demshar served as 'alter egos for each other' on The Slovene Home for the Aged job, and that the effect of the Award was simply to transfer the steward from one joint venturer's payroll to another, in accordance with the collective bargaining agreement between the parties.

Foti argued that in order for the Panel to resolve the issue, it was critical that the Panel review not only the language of the collective bargaining agreement but also the bargaining history surrounding the steward clause in the collective bargaining agreement. (Tr.Arb. pp. 8–10.) Foti further contended that, under the clear language of the current collective bargaining agreement and previous collective bargaining agreements, when there is a general or prime contractor on a job, it is the general or prime contractor's sole responsibility to accept the assignment of a steward by the Union. (Tr.Arb. p. 9.) It was further contended that, under the circumstances of the case, to require Foti to lay-off one of its employees who was a member of the Union already employed at the job in order to hire the steward appointed by the Union, would cause Foti and the Union to violate Section 8(a)(3) and 8(b)(2) of the Labor Management Relations Act, 1947 (29 U.S.C.

158(a)(3) and (b)(2)).[5] (Tr.Arb. p. 10.) In positing the foregoing contention to the Panel, its attention was specifically directed to *The PaintSmiths, Inc. v. National Labor Relations Board*, 620 F.2d 1326 (8th Cir., 1980).

On January 6, 1982, a copy of the Award was delivered to Foti. In finding for the Union, the Award held the following (Arb. Award, pp. 3–4):

... Thus, it is the finding of the Arbitration panel that:

1. The Union has the right to designate a Steward;
2. Once employed, the Steward must continue to be employed until the job is completed;
3. If the General Contractor has no work available, then the employer employing the most laborers on the job must employ the Steward;
4. If the General or Prime Contractor again employs laborers on the job, the Steward shall revert to the payroll of the General or Prime Contractor;
5. As provided in Paragraph 18.E., the Steward shall also perform the duties as a Laborer;
6. Since the question of the legality of the work stoppage is before Judge Manos, the panel makes no finding with respect to the work-stoppage.

This matter is before the Court as a result of the Complaint filed by Plaintiff-Appellant, J.L. Foti Construction Company, Inc. against Defendant-Appellee, Laborers' International Union of North America, Building and Construction Laborers' Union Local No. 310. Foti's Complaint alleged that a Labor Arbitration Panel exceeded its authority in rendering its decision.

The Union filed a Counterclaim under the U.S.A.A., 9 U.S.C. Section 9, and sought to confirm the Award upon the allegation that the Panel did not exceed its authority in rendering its decision.

**A. The Proceedings Below**

The case was assigned to the Honorable John M. Manos, who, despite Foti's objection, held a trial *de novo*, and on May 17, 1983, issued an Order granting the Union's Motion for involuntary Dismissal of Foti's Complaint and entered Judgment on the Union's Counterclaim to confirm the Award.

---

[5] Section 8(a)(3) of the Act makes it an unfair labor practice for an employer to discriminate "in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." Section 8(b)(2) of the Act makes it an unfair labor practice for a labor organization "to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3)."

Brief of Appellant Foti Construction Co. (emphasis deleted) (footnotes omitted).

This dispute resulted in 1) a work stoppage, 2) an injunction restraining same issued by the District Court, 3) an arbitration proceeding under the management-union contract, 4) a unanimous award by the five man arbitration panel (which panel included two arbitrators designated by Foti), 5) the filing of the instant complaint by the company alleging that the arbitration panel exceeded its authority in rendering its decision, 6) the filing of a counterclaim by the union under the United States Arbitration Act seeking confirmation of the arbitration panel's award, 7) a trial on the union's counterclaim before the District Court which included an evidentiary hearing on the question phrased in an Eighth Circuit case, *PaintSmiths, Inc. v. National Labor Relations Board*, 620 F.2d 1326 (8th Cir. 1980), did the union have a "substantial purpose" in its insistence on choosing and requiring the hiring of its steward, 8) the entry of judgment by the District Court holding that the union did have such a purpose and enforcing the arbitration award, and 9) appellant Foti's appeal to this Court.

The fundamental law of this case is contained in the United States Arbitration Act, 9 U.S.C. §§ 1–14 (1982), and *The Steelworkers Trilogy, United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers*

*of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

Section 9 of the Arbitration Act provides:

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in section 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

In *Enterprise Wheel & Car,* the Supreme Court said:

[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement .... He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement.

363 U.S. at 597, 80 S.Ct. at 1361.

We now affirm the judgment of the District Court in enforcing the award of the arbitration panel. As the District Judge found on ample evidence in this record, the arbitration award did "draw its essence" from the parties' collective bargaining agreement.

The crucial question involved in this case is whether the union had the right under its contract to demand that the steward, Ricotta, who had been designated by the labor union as steward for the Slovene Home, and had been employed by the general contractor while he was employing laborers on that project, should be transferred to Foti's payroll. The transfer demanded by the union occurred when two conditions were presented. First, the only steward designated for the Slovene Home project, Ricotta, was laid off by the general contractor because he was no longer employing any laborers at the site. Second, Foti, at that point, was employing laborers on the site, and under the contract, the union had a right to have a steward on the job. Thus, the original conflict was whether the contract should be construed to require the general contractor, who had no work for any laborers at the time, to pay Ricotta for fulltime employment when the record plainly shows that the steward's duties occupied something less than 25% of his time. Under the contract, the union had no right to demand that a steward be employed by the general contractor under circumstances where the general contractor had no work for him.

The question which was not clearly answered by the labor management contract involved in this case was whether under these circumstances, the union had a right to demand that Ricotta be transferred to Foti's payroll and be paid by Foti, with the consequent lay off from that particular job of a laborer who was also a union man.

Plainly, under the contract, the designation of a steward was a union privilege since the steward was, by definition, a functionary of the union. The arbitrators, two of whom had been designated by Foti, unanimously decided that the contract should be construed to require Foti to accept steward Ricotta as a laborer on Foti's job. The man whom Ricotta replaced was actually transferred to another Foti job and lost no time as compared to the work which Ricotta did for Foti.

As we see this matter, these facts are easier to resolve than were the facts before the Eighth Circuit in *PaintSmiths, Inc. v. National Labor Relations Board,* 620 F.2d 1326 (8th Cir.1980).

*PaintSmiths* only applies if the union compels an employer to displace another laborer with a union steward. In this case, Local 310 informed Foti before he ever had any laborers at the Slovene project that the

union would designate Ricotta to his payroll. He accepted the responsibility for taking a steward, but asked the union to designate a different laborer from another project. When the union insisted on its right to name the steward, Foti proceeded to staff his workforce. He cannot be heard to complain that Local 310 then forced him to bump another laborer. The problem of displacement was created by Foti, not the union.

Moreover, Local 310 conclusively demonstrated in the arbitration hearing that it had a far more substantial purpose than was demonstrated by the union in *PaintSmiths*. Ricotta was not related to anyone in Local 310 and had been steward at the Slovene project since the start of construction.

Plaintiff-appellant Foti relies upon §§ 8(a)(3) and 8(b)(2) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(3) and (b)(2), quoted above. We cannot appropriately fault the union's actions insisting upon its designated steward being transferred to the only labor force then working on the construction project. Nor can we appropriately construe the transfer of the laborer who was displaced by Ricotta by being employed by Foti as a violation of the Act.

We believe that the substantial and legitimate purpose of the union's insistence was clear from the record of the arbitration proceedings. It was also made doubly clear by the evidentiary hearing before the District Judge, if we assume, without deciding, that such was essential to decision of this case.

We find it unnecessary to decide whether the jurisdiction of the District Court depends solely upon the United States Arbitration Act, or solely upon *The Steelworkers Trilogy*. The United States Arbitration Act and *The Steelworkers Trilogy* together complement each other in establishing the strong preference in the law of the United States favoring arbitration of labor disputes.

The judgment of the District Court is affirmed.

CORNELIA G. KENNEDY, Circuit Judge, concurring.

As stated by Judge Edwards, Foti filed this action to have the award of an arbitration panel set aside. The union counterclaimed to have the award enforced. I agree that the District Court was correct in enforcing the award. I write separately to explain my reasons for concluding that the award was properly grounded in the collective bargaining agreement and that the award did not violate public policy by permitting the union to cause the employer to violate the National Labor Relations Act.[1]

### 1. Authority Under the Agreement to Enter the Award.

Foti contends that the arbitrators exceeded their authority and failed to draw the

---

**1.** In addition to its substantive arguments, Foti also complains that the Arbitration Act does not confer jurisdiction to enforce arbitration awards arising out of collective bargaining agreements, and thus that the District Court was without jurisdiction to consider the union's counterclaim. There is presently a division among the circuits on the question of whether the Arbitration Act may apply to disputes arising from collective bargaining agreements. In *Hoover Motor Express Co. v. Teamsters Local Union No. 327*, 217 F.2d 49 (6th Cir.1954), this Court explicitly held that, despite the provision excepting employment contracts from the Act, it did apply to collective bargaining agreements. In a more recent case, this Court has held that the Arbitration Act applies to collective bargaining agreements, at least to the extent of providing procedural requirements for arbitration. See *Chattanooga Mailers Union v. Chattanooga*

*News-Free Press Co.*, 524 F.2d 1305 (6th Cir. 1975). Jurisdiction of the counterclaim under the Arbitration Act was therefore proper.

Foti next argues that the requirement of section 9 of the Arbitration Act, that a court may confirm an arbitration award only if the parties have agreed that arbitration awards may be enforced in court, was not satisfied here because the agreement did not specifically provide that arbitration awards may be entered as court judgments. The collective bargaining agreement does provide that the arbitrators' award "shall be final and binding upon" the parties. Courts have uniformly held that such language is sufficient to permit enforcement under the Arbitration Act. See *Milwaukee Typographical Union No. 23 v. Newspapers, Inc.*, 639 F.2d 386, 389–90 (7th Cir.), *cert. denied*, 454 U.S. 838, 102 S.Ct. 144, 70 L.Ed.2d 119 (1981) and cases cited therein.

essence of their decision from the collective bargaining agreement when they ordered him to accept the steward designated by the union. I agree with Judge Edwards that this contention is without merit.

Article III, Section 18 of the collective bargaining agreement provides as follows in part:

**Section 18.—Stewards**

**A. At the discretion of the Business Manager,**

a Steward will be sent to all jobs when the job first starts. It shall be the responsibility of those listed for the placement of the Steward. Any person, Construction Manager, Prime Contractor, General Contractor, Brokerage Firm, Corporation or Company that employs Laborers directly or indirectly must accept the Steward sent out by the Business Manager, and he or his Field Representatives may visit and consult with the Steward and members on the job.

B. When there is a General Contractor or Prime Contractor, the employment of the Steward shall be their responsibility with the approval of the Business Manager.

\* \* \* \* \* \*

E. The Steward shall not be discriminated against, nor laid off for performance of his duty as a Steward, but he shall also perform the duties as a Laborer.

\* \* \* \* \* \*

G. The Steward shall be the last employee to be discharged and shall remain on the job until it is completed. The Steward shall be the last employee laid off during a temporary work shortage and shall be the first employee called back when work resumes. The Steward shall not be transferred from a job while employees remain on the job.

After considering these provisions, the arbitration panel made the following findings:[2]

Under paragraph 18.A. it is clear that any Company that employs Laborers "must accept the Steward sent out by the Business Manager." This applies to the Foti Co.

Under paragraph 18.B. the responsibility for employing a Steward in the first instance rests with the General or Prime Contractor. Once on the job, the Steward shall remain on the job "until it is completed" under paragraph 18.G. Thus, it is the finding of the arbitration panel that:

1. The Union has the right to designate a Steward.

2. Once employed, the Steward must continue to be employed until the job is completed.

3. If the General Contractor has no work available, then the employer employing the most laborers on the job must employ the Steward.

4. If the General or Prime Contractor again employs laborers on the job, the Steward shall revert to the payroll of the General or Prime Contractor.

5. As provided in paragraph 18.E., the Steward shall also perform the duties as a Laborer.

The arbitrators' findings are a reasonable interpretation of an ambiguous collective bargaining agreement. Foti contends that paragraph B unambiguously expresses the parties' intention that a subcontractor would never be bound to employ the steward. However, this construction is not consistent with paragraph A, which provides that "[a]ny person . . . that employs Laborers directly or indirectly must accept the Steward sent out by the Business Manager," or with the clear intent, expressed in several provisions, that the steward designated by the business manager would al-

---

**2.** The arbitrators made no finding as to whether Demshar and Foti were joint venturers. Their award was clearly not based on any special relationship between Demshar and Foti other than the relationship between contractor and subcontractor. The existence of a joint venture is therefore not before us for review.

ways be employed at every job site as long as any laborers were working.

Paragraph B, as applied to this case, is ambiguous in two respects. First, it says that the steward's employment is the general contractor's "responsibility," but does not explicitly state whether this means that the general contractor must hire the steward himself, or merely that the general contractor is responsible for allocating the steward to one of various employers of laborers at the job site. The latter interpretation has some support in the history of the provision, which was drafted to avoid disputes among subcontractors as to who had to hire the steward. Second, "[w]hen there is a general contractor" may be read as meaning when there is a general contractor whose employees are performing laborer work at the site. Indeed, it is questionable that the union could require a general contractor to employ a steward when that general contractor employs no members of the laborers' union.

Foti makes several arguments that the bargaining history supports its position, but these go to the merits of the award rather than to the arbitrators' authority. Foti also argues that it should not have to hire the particular steward designated by the union, but this is not supported in the language of the collective bargaining agreement. The District Court was correct in finding that the award was within the arbitrators' authority to interpret the collective bargaining agreement.

### 2. Violation of NLRA Section 8(b)(2)

Foti also contends that the collective bargaining agreement, as interpreted by the arbitrators, would result in a violation of NLRA § 8(b)(2), 29 U.S.C. § 158(b)(2). The agreement may not be enforced if to do so would violate the policy of the NLRA. *Hurd v. Hodge,* 334 U.S. 24, 68 S.Ct. 847, 92 L.Ed. 1187 (1948); *Glendale Manufacturing Co. v. Local 520 International Ladies' Garment Workers Union,* 283 F.2d 936 (4th Cir.1960), *cert. denied,* 366 U.S. 950, 81 S.Ct. 1902, 6 L.Ed.2d 1243 (1961).

Section 8(b)(2) provides that:

It shall be an unfair labor practice for a labor organization or its agents—

> to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3)
>
> . . . .

Section 8(a)(3) states that:

It shall be an unfair labor practice for an employer—

> by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . . .

Requiring Foti to lay off one union member in order to hire the steward designated by the business manager would be discrimination in tenure of employment. Even transferring an employee to another job site is discrimination in a condition of employment. Section 8(a)(3) applies not only to the fact of union membership but also to discrimination based on the level of the employee's activity in the union. *Radio Officers' Union v. NLRB,* 347 U.S. 17, 39–42, 74 S.Ct. 323, 335–337, 98 L.Ed. 455 (1954); *Teamsters Local 20 v. NLRB,* 610 F.2d 991 (D.C.Cir.1979). In *Radio Officers',* the Court held that "[t]he policy of the [NLR] Act is to insulate employees' jobs from their organizational rights," and that the Act was "designed to allow employees to . . . be good, bad, or indifferent members [of the union]." 347 U.S. at 40, 74 S.Ct. at 335.

More than discrimination is required to establish a violation of section 8(b)(2), however. There must also be a motive to encourage or discourage union activity. Such motive need not be proved by explicit evidence; it may be inferred where the natural consequence of the employer's action was encouragement or discouragement. 347 U.S. at 44–45, 74 S.Ct. at 337–338.

The Supreme Court considered the question of when an illegitimate motive may be inferred in *NLRB v. Great Dane Trailers,* 388 U.S. 26, 87 S.Ct. 1792, 18 L.Ed.2d 1027 (1967). In that case, the employer was accused of discriminating against striking employees, but claimed a business motive.

The Court held that if the employer could show that "a substantial and legitimate business end is served," 388 U.S. at 34, 87 S.Ct. at 1798, the employer's motive was prima facie lawful and an illegitimate motive had to be proven affirmatively. Otherwise, the bad motive could be inferred.

The Second and Eighth Circuits have applied this "substantial and legitimate" justification standard to a union's placement of a steward. *NLRB v. Milk Drivers and Dairy Employees, Local 338*, 531 F.2d 1162 (2d Cir.1976); *PaintSmiths, Inc. v. NLRB*, 620 F.2d 1326 (8th Cir.1980).[3]

The District Court tried de novo the issue of whether there was "substantial and legitimate" justification for the placement of the particular steward.[4] It found that the selection of a steward from outside the employer's work force had substantial purpose. The temporary nature of employment of persons in the construction industry makes them particularly dependent on the good will of the employer. The court found that Foti maintains a nucleus of eight to thirteen or fourteen laborers that are the last to be laid off and that Foti has sole discretion as to whether and which will be laid off. Because of this dependence it is difficult, the District Judge found, for a Foti employee to have the independence necessary to be a good steward. The court pointed to evidence of numerous jurisdictional disputes in which other crafts or trades may have performed laborer work and to unsafe working conditions as reasons that the union needed an aggressive steward. The District Court specifically found that employee dependence existed among Foti's employees and that therefore the union had a substantial purpose in appointing a steward outside Foti's regular work force. The finding that Foti's employees were dependent is a finding of fact. It is not clearly erroneous. Whether this reason is substantial is a mixed question of law and fact. I agree with the District Court that it is a substantial reason. The union as an entity has an interest in keeping all laborer work for members of the union. A particular union member who regularly works for an employer may have little interest in jeopardizing a good relationship with the employer on whom he or she is dependent for continued employment to assure some unidentified member of the union a job as a laborer.

**3.** Judge Edwards holds that "[t]he problem of displacement [of the union member replaced by the steward] was created by Foti, not the union." Judge Edwards reasons that since Foti had notice before it began work on the project that the union would designate a particular steward, yet proceeded to staff its work force, only Foti is to blame for having to lay off a union member.

This reasoning is based on a factual premise—that Foti had notice of the union's demand before it hired its laborers—that was not found by either the District Court or the arbitration panel, and is not argued by the parties. More importantly, even if this factual premise is true a substantial and legitimate purpose must still be found or the arbitration award cannot be enforced. Whether Foti or the union is to blame is irrelevant to the analysis.

If the collective bargaining agreement required Foti to leave room for the steward and Foti had complied, the union would have violated § 8(b)(2) nonetheless by enforcing that agreement, unless it had a substantial and legitimate purpose for doing so. Section 8(a)(3) covers discrimination "in regard to *hire or* tenure of employment." (Emphasis added.) The fact remains that Foti did not leave room for the steward, and enforcement of the arbitration award resulted in discrimination in tenure of employment in favor of the steward and against another union member. In either scenario Foti would discriminate in favor of a union member because of the level of his union allegiance.

If Foti had voluntarily acquiesced in hiring the outside steward, with no compulsion by the union, Foti would have violated § 8(a)(3) directly by discriminating in hire, tenure, or conditions of employment unless it had a substantial and legitimate business reason for doing so. Discrimination that encourages union activity violates the NLRA whether caused by the union (§ 8(b)(2)) or by the employer (§ 8(a)(3)). An arbitration award resulting in a violation of the NLRA by Foti is no more enforceable than is an award resulting in a violation by the union. Accordingly, the arbitration award is not enforceable unless there is a substantial and legitimate purpose for requiring an outside steward. Absent such a purpose, the arbitration award infringes employees' organizational rights without respect to whether the displacement problem was caused by Foti or the union.

**4.** The arbitrators declined to pass upon this issue.

The need for an independent steward to enforce safety regulations contributes only marginally to the substantial reason for the union's insistence on naming the steward. Here every employee's self-interest in safety makes it unlikely a steward would acquiesce in safety violations.

The District Court made no express finding one way or the other as to whether the union's reason of naming the steward was also a legitimate reason.[5] Whether the reason is legitimate is a question of law.

Enforcement of the collective bargaining agreement for the benefit of all union members by insisting that all laborer work be done by members of the laborers' union as opposed to bricklayers' helpers, carpenters' helpers or others is a legitimate union purpose. It does not benefit favored union members. It does not discriminate against "passive" or independent union members as opposed to "more active" or "good" union members. The union here has established that a legitimate business end is served. Under the teaching of *Great Dane*, Foti was thus required to affirmatively prove that the union instead had an illegitimate motive. This it failed to do.

The instant case is distinguishable from *NLRB v. Milk Drivers and Dairy Employees, Local 338*, 531 F.2d 1162 (2d Cir.1976). There the collective bargaining agreement provided for super-seniority for stewards not only in layoff and recall but for the allocation of numerous and significant on-the-job benefits, such as the choice of the most lucrative delivery routes. The NLRB sought enforcement of its order requiring the union to cease and desist from enforcing the super-seniority clause because it spurred ambitious workers to be "good, enthusiastic unionist[s]." The Second Circuit, relying upon *Radio Officers'*, held that: "For the union to employ job-related benefits to maintain its own organization would, thus, fly in the face of this statuto-

ry purpose ["to insulate employees' jobs from their organizational rights"]." 531 F.2d at 1167 (footnote omitted). The Second Circuit noted that the union had not introduced any evidence to rebut the Board's reasonable conclusion that union activism would be a factor in choosing union stewards.

The court noted that:

The General Counsel did not challenge that portion of the "super-seniority" provisions protecting stewards from layoff because, in his opinion, that preference had a legitimate and substantial justification: a union may find itself powerless to supply any real representation if it is unable to maintain the same steward continuously on the job. Obviously, this justification does not apply to the on-the-job benefits accorded the steward. The validity of the layoff "super-seniority" provisions is, we note, not before us.

*Radio Officers'*, 531 F.2d at 1166 n. 7. Because the union had not shown that it could not get capable workers to become stewards without the super-seniority benefits of choosing routes, the court held it had not met its burden of proof. Here the union did show why it could not recruit a stewart from among Foti's employees who could perform satisfactorily.

Accordingly, I would affirm the District Court.

---

5. The District Court did not make any such finding because it found instead that "Foti concedes that the Union has a legitimate purpose in appointing *a steward* on any job on which [Foti] employs laborers" (quoting from Foti's brief) (emphasis and brackets in original). However, the purpose at issue here is the union's purpose in requiring that a steward from outside Foti's regular work force be hired. Foti's concession was limited to the union's purpose in appointing *a steward*.