**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**AUTO WAREHOUSERS, INC., and Teamsters, Local No. 47, Respondents.**

No. 77–2040.

United States Court of Appeals, Fifth Circuit.

April 19, 1978.

Elliott Moore, Deputy Associate Gen. Counsel, John Burgoyne, Supervisor, Susan Papadopoulos, Attys., John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, N. L. R. B., Washington, D. C., for petitioner.

L. N. D. Wells, Jr., Dallas, Tex., for Local No. 47.

R. Ian Hunter, C. John Holmquist, Jr., Bloomfield Hills, Mich., for Auto Warehousers, Inc.

W. Edwin Youngblood, Director Region 16, N. L. R. B., Fort Worth, Tex., for other interested party.

Before CLARK and GEE, Circuit Judges, and LYNNE *, District Judge.

CHARLES CLARK, Circuit Judge:

■ Petitioner, the National Labor Relations Board, seeks enforcement of an order against the respondent union, Teamsters Local No. 47, and the respondent company, Auto Warehousers, Inc. The order was based upon findings by the Administrative Law Judge that the union had violated Section 8(b)(1)(A) and (2)[1] and that the company had violated Section 8(a)(1) and (3)[2] of the National Labor Relations Act by enforcing and maintaining a provision in their collective bargaining agreement that allowed shop stewards to be granted super-seniority extending to terms and conditions of employment beyond layoff and recall. We find that no event constituting an unfair labor practice occurred within six months of

---

* Senior District Judge of the Northern District of Alabama, sitting by designation.

1. 29 U.S.C.A. § 158(b)(1)(A) & (2) (1973).

2. 29 U.S.C.A. § 158(a)(1) & (3) (1973).

the filing of the charge in this case and that the Board's action was time-barred under Section 10(b).[3] Therefore, we deny enforcement.

Auto Warehousers services motor vehicles at a terminal facility in Arlington, Texas. The agreement between the company and the union contains the following provision concerning seniority for stewards:

Section 1: There may be a steward at each terminal. One steward . . . shall be granted super seniority for all purposes, including layoffs, rehire, biddings, and job preferences, as requested by the Local Union in writing.

The Board maintains that this clause is invalid under the rule in *NLRB v. Milk Drivers & Dairy Employees Local No. 338*, 531 F.2d 1162 (2d Cir. 1976) (*Dairylea*), which held that contractual provisions granting shop stewards super-seniority for purposes beyond layoff and recall are presumptively unlawful. Relying upon *Radio Officers' Union v. NLRB*, 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455 (1954), the court in *Dairylea* reasoned that according a shop steward job perquisites without business justification rewarded him for his union adherence. Because common experience indicated that the desire of employees to join unions rises or falls with the advantages which they might obtain, the Act prohibits according special privileges in employment which business necessity does not justify.

The parties here agree that a contractual provision through which stewards could be granted super-seniority has been included in contracts with the company at least since 1955. Under the provisions executed in 1973, which were in effect when charges were filed, a shop steward does not automatically acquire super-seniority when he acquires his position. Rather, the steward must make a request to the union which then forwards the request to the company. Jerry M. Hudson, the shop steward whose super-seniority the Board challenges, originally took office in March 1975.[4] In April 1975, one month after his election as steward, Hudson directed a request to his union that he be granted super-seniority. The union approved his request. The company agreed to the union's written recommendation and Hudson thereupon took top place on the seniority roster above four other employees senior to him in service. During the same month, he used his super-seniority status to obtain a newly created job as service station attendant. During the annual posting and bidding for all jobs the following August, Hudson bid on and received the same position by virtue of his super-seniority. The unfair labor practice charges upon which the Board bases its complaint were not filed until January 1976.

Respondents contend that the elements of the unfair labor practice alleged are time-barred by the limitation period in Section 10(b), which provides that

no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made . . . .

29 U.S.C.A. § 160(b). The execution of the contract, Hudson's request for super-seniority, the grant of super-seniority, and Hudson's initial bid for his present position all took place outside the Section 10(b) period. However, within six months prior to the filing of the charge Hudson did rebid for the job he already held. The findings of the Administrative Law Judge, which affirmed the Board, were that

[e]ach act or incident of such enforcement constitutes a reaffirmance or renewed "entering into" of the super seniority clause . . . .. The operative facts to support the violations stem from the particular instances within the 10(b) period that the super seniority was implemented in discrimination against other unit employees [footnotes omitted].

---

3. 29 U.S.C.A. § 160(b) (1973).

4. The shop steward who served prior to Hudson already had greater seniority than any oth-er worker and never had a need for super-seniority.

Hudson's rebidding in August to retain the job earlier acquired by virtue of super-seniority was the sole alleged incident of enforcement which occurred within the six-month period.

We are called upon to decide whether an independent unfair labor practice occurred within the Section 10(b) period. Both petitioner and respondents rely upon *Local Lodge No. 1424 v. NLRB*, 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed. 2d 832 (1960) (*Bryan Manufacturing*), where the Supreme Court sought to determine when a contract provision, no longer challengeable as unlawfully executed, could be challenged because the union's maintenance and enforcement constituted a separate unfair labor practice within the limitations period. The Court distinguished two sets of circumstances:

> The first is one where occurrences within the six-month limitations period in and of themselves may constitute, as a substantive matter, unfair labor practices. There, earlier events may be utilized to shed light on the true character of matters occurring within the limitations period . . . .. The second situation is that where conduct occurring within the limitations period can be charged to be an unfair labor practice only through reliance on an earlier unfair labor practice. There the use of the earlier unfair labor practice is not merely 'evidentiary,' since it does not simply lay bare a putative current unfair labor practice. Rather, it serves to cloak with illegality that which was otherwise lawful. And where a complaint based upon that earlier event is time-barred, to prevent the event itself to be so used in effect results in preserving a legally defunct unfair labor practice.

362 U.S. at 416–17, 80 S.Ct. at 826–27, 4 L.Ed.2d at 838. In *Bryan Manufacturing*, the entire foundation of the unfair labor practice charged was the union's time-barred lack of majority status when the original collective bargaining agreement was signed.

■ In teaching that Section 10(b) bars claims which must rely upon earlier violations outside the period, *Bryan Manufactur-*

*ing* reasoned that the limitation embodied in Section 10(b) would have little significance if it could be circumvented by using any current event which would not have come about but for an earlier incident alleged to be an unfair labor practice as the basis to attack a time-barred occurrence. Thus, in deciding whether a complaint makes mere evidentiary use of events anterior to the Section 10(b) period or whether it resurrects a defunct charge, the court must keep in mind the purpose of the limitation: to prevent persons from being brought to book on stale charges and to promote industrial stability by allowing parties after the time prescribed as reasonable to assess with certainty their liability for past conduct. *See Bryan Manufacturing, supra*, 362 U.S. at 424, 80 S.Ct. at 831, 4 L.Ed.2d at 842; *NLRB v. McCready & Sons, Inc.*, 482 F.2d 872, 875 (6th Cir. 1973).

■ First, we consider whether maintenance of the contract provision alone constituted a continuing unfair labor practice which Section 10(b) did not bar. In *Bryan Manufacturing*, the Supreme Court recognized that a continuing violation would exist if the underlying contract provision was on its face unlawful. However, the super-seniority provision in the union's contract with Auto Warehousers is not invalid on its face. The mere existence of the clause through which Hudson obtained super-seniority status does not constitute an unfair labor practice. *Cf. NLRB v. Dallas General Drivers Local No. 745*, 228 F.2d 702, 705 (5th Cir. 1956). Even though the rule in *Dairylea* cloaks super-seniority clauses extending benefits beyond layoff and recall preference with presumptive invalidity, it does not purport to make them invalid *per se*. The legality of including the clause in the contract depended upon the existence of an adequate business justification for such a provision at the time of execution. Therefore, maintenance of the contract provision alone did not constitute an unfair labor practice.

Second, we consider the contention that an unfair labor practice charge could be predicated upon an instance of enforcement

or implementation occurring within the Section 10(b) period. To analyze this claim, we must initially determine when a charge based on contract enforcement first could have been brought. If the right to bring a charge first accrued at a date outside the Section 10(b) period, we then must consider whether the Board's alleged incident of enforcement within the Section 10(b) period— Hudson's rebidding for his position—was an act independent of the initial enforcement such that assessing the legality of the rebidding does not depend upon time-barred events.

In the case at bar, any liability for enforcement of the contract first accrued when Auto Warehousers, acting upon the union's recommendation, accorded super-seniority to Hudson. At the time unfair labor practice charges were filed against Auto Warehousers and the union, Hudson's placement at the head of the seniority list had been a fully consummated and well-publicized act open to challenge for more than six months.[5]

■ Having determined that the right to bring unfair labor practice charges accrued prior to the Section 10(b) period, we consider whether Hudson's rebidding constituted an event independent of the initial enforcement of the contract. The rebidding was not an independent enforcement for three reasons: (1) the nature of the vice inherent in the alleged unfair labor practice charged; (2) the fact that a determination of the claims would require the assessment of conduct outside the Section 10(b) period; and (3) the effect upon the purposes of Section 10(b) of treating the rebidding as a separate instance of enforcement.

The gravamen of the unfair labor practices charged by the Board is the exercise of a power to reward union adherents by granting a steward special terms and conditions of employment beyond what he requires to perform his duties. As to Hudson, that power was fully exercised when he first received super-seniority status. Under the union's contract with Auto Warehousers, super-seniority once conferred upon a steward remains with him until he leaves office. Exercise of the status by bidding affected neither the nature nor the extent of the privileges already granted. The bounds of Hudson's new status were apparent to all and fully open to challenge as soon as the company made known that it had acceded to the union's request.

■ Each use by Hudson of his permanently granted super-seniority in bidding for a shift did not constitute an unfair labor practice separate from his acquiring super-seniority status. Because the unlawfulness alleged depended upon past events, we reject the Board's theory that with each bid the respondents committed an independent breach of a continuing obligation. To find that Hudson's rebidding violated the Act would require a determination whether business justification initially existed for the award of super-seniority. Therefore, this case differs from one in which the Board contends that a party, by some specific act, has failed to meet an obligation, the existence of which is established by circumstances present within the Section 10(b) period. In the latter situation, the failure to meet the obligation within the period constitutes an unfair labor practice complete in itself within the Section 10(b) period. The most common example of this type of unfair labor practice is a refusal to bargain, which is actionable if an act of refusal took place within the Section 10(b) period, even if earlier refusals took place outside the period. *See, e. g., NLRB v. Louisiana Bunkers, Inc.,* 409 F.2d 1295, 1299–1300 (5th Cir. 1969); *NLRB v. White Construction & Engineering Co.,* 204 F.2d 950, 952–53 (5th Cir. 1953). We have also applied the continuing obligation analysis

5. Hudson's fellow employees knew about his super-seniority status almost immediately after it was granted. The record contains a grievance dated May 5, 1975, which complains about the grant. Therefore, we are not faced with a situation in which we must consider whether the statute of limitations was tolled until the aggrieved parties knew or should have known that their statutory rights were violated. *See, e. g., Wisconsin River Valley District Council v. NLRB,* 532 F.2d 47 (7th Cir. 1976).

where a union on several separate occasions refused to process grievances, Local Union No. 12, *United Rubber Workers v. NLRB*, 368 F.2d 12, 15 n.2 (5th Cir. 1966), *cert. denied*, 389 U.S. 837, 88 S.Ct. 53, 19 L.Ed.2d 99 (1967), and where a company made continued rejections of applicants for employment, each of which was for improper reasons, *NLRB v. Albritton Engineering Corp.*, 340 F.2d 281, 285 (5th Cir.), *cert. denied*, 382 U.S. 815, 86 S.Ct. 31, 15 L.Ed.2d 62 (1965).

Independent violations of continuing obligations do not exist where the illegality of the conduct charged cannot be established without assessing events outside the Section 10(b) period. For example, an otherwise lawful refusal to hire does not violate the Act because an applicant was wrongfully discharged outside the Section 10(b) period, since establishing the unlawful failure to hire would require an assessment of the earlier unlawful discharge. *NLRB v. McCready & Sons, Inc.*, 482 F.2d 872 (6th Cir. 1973). Picketing employees claiming status as unfair labor practice strikers have been barred from relying on conduct outside the Section 10(b) period where no meritorious charge was filed within six months. Although a strike may continue within the Section 10(b) period because of an earlier violation, the asserted justification for the strike in such circumstances would necessarily depend upon whether conduct outside the Section 10(b) period amounted to an unfair labor practice. *NLRB v. District 30, United Mine Workers*, 422 F.2d 115, 121–22 (6th Cir. 1969), *cert. denied*, 398 U.S. 959, 90 S.Ct. 2173, 26 L.Ed.2d 543 (1970). Similarly, resolution of the Board's complaint against Auto Warehousers and the union would require determining whether adequate business justification existed at the time Hudson was accorded super-seniority and, thus, would impermissibly resurrect time-barred events.

Treating Hudson's rebidding as an act independent of his being accorded super-seniority status would not only blink reality, but also would seriously undermine the purposes of Section 10(b). The position espoused by the Board would have allowed the bringing of an unfair labor practice charge based upon granting super-seniority to Hudson at any time during the term of the contract. Establishing a defense of business justification to the Board's complaint requires reference to facts and occurrences surrounding the requesting and granting of super-seniority status. To consider each rebidding which used this already granted seniority to create a new basis for charging that the former events constituted an unfair labor practice would leave the union and employer both uncertain of their liabilities and saddled with the burden of making a defense that would increase in difficulty with the petitioner's delays. Such a result clearly would contravene the purpose of Section 10(b).

Our disposition of the Section 10(b) contention makes it unnecessary to reach the other contentions advanced by the Board and by the respondents.[6] Because Section 10(b) bars the charges advanced by the Board, the Board's order cannot be enforced.

ENFORCEMENT DENIED.

---

**6.** The Board asserted that Hudson used his super-seniority status for purposes unrelated to his steward's job. The union contended that enforcement should be denied for failure to join other parties to what allegedly was a nation-wide master agreement. The Board and the respondents differed on whether the election procedure by which Hudson was chosen as steward affected the application of the rule in *Dairylea* because the union's control over Hudson was indirect.