**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOCAL 1131 (84–5428), Local 1161 (84–5944), International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Respondents.**

Nos. 84–5428, 84–5944.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 17, 1985.
Decided Nov. 29, 1985.

Elliott Moore & John D. Burgoyne (argued), Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., for petitioner in No. 84–5428.

Jordan Rossen, Leonard Page (argued), Michael B. Nicholson, International Union, UAW, Detroit, Mich., for respondent in No. 84–5428.

Elliott Moore & John Burgoyne (argued), Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., for petitioner in No. 84–5944.

William P. Bobulsky, Betty Grdina, Astabula, Ohio, Jordan Rossen, Leonard Page (argued), Detroit, Mich., for respondent in No. 84–5944.

Before ENGEL and MILBURN, Circuit Judges, and WEICK, Senior Circuit Judge.

MILBURN, Circuit Judge.

In these consolidated cases involving contractual provisions that grant superseniority to the respondents' recording secretary and financial secretary, respectively, petitioner National Labor Relations Board (the "Board") seeks enforcement of its orders

finding respondents in violation of sections 8(b)(1)(A) and (b)(2) of the National Labor Relations Act (the "Act"), 29 U.S.C. § 158(b)(1)(A), (b)(2). The primary issue for our determination is whether the rule announced in *Gulton Electro-Voice, Inc.,* 266 N.L.R.B. 406 (1983), *enforced sub nom. Local 900, International Union of Electrical, Radio and Machine Workers v. NLRB,* 727 F.2d 1184 (D.C.Cir.1984), should be followed by this court under the facts of these cases. Under *Gulton,* superseniority provisions are lawful only if they are limited to union officers who must be on the job in order to accomplish duties directly related to administering the collective-bargaining agreement. For the reasons that follow, we join the D.C. Circuit along with the Second, Seventh and Fourth Circuits [1] in enforcing the *Gulton* rule and grant the Board's applications for enforcement of its orders in these cases.

## I.

### A. No. 84-5944 (*Local 1161*)

Respondent Union Local 1161 and Pfaudler Company, a division of Kennecott Corporation (the "Employer"), were parties to a collective-bargaining agreement running from July 30, 1981, to July 30, 1984. Paragraph 34 of the contract dealt with seniority and provided that such matters as "decrease of work forces" and "recall after layoffs" would "be determined in proportion to the length of continuous service...." However, Paragraph (4) of the contract stated:

Members of the union committee, as defined in paragraph (4) shall head the seniority list (during their term of office) and their respective classifications, providing they are able to perform the available work.

Paragraph (4) indicated that the recording secretary is a member of the union committee. Pursuant to the above provisions,

Pauline Markel, respondent's recording secretary, was accorded superseniority.

On July 21, 1983, the UAW Regional Director issued a letter to the Employer stating that, in light of the Board's decision in *Gulton,* the Union would not seek enforcement of the contractual superseniority clause for officers not involved in contract administration duties. On August 5, 1983, the Employer terminated Markel's superseniority, laid her off, and three days later recalled another employee who enjoyed natural seniority superior to Markel. On August 9, 1983, Markel filed a written grievance. The grievance charged the Employer with a violation under the superseniority provision, demanded Markel's recall to work and that she be made whole. On August 15, 1983, the Employer filed an unlawful labor practice charge against respondent. The Employer alleged that respondent had attempted to enforce the superseniority clause and that such enforcement would unlawfully discriminate against any employee who is not a union official.

Following a hearing, the Administrative Law Judge (ALJ) concluded that the functions of the recording secretary did not rise to the level of responsibility necessary to sustain a grant of preferential seniority under the Board's decision in *Gulton.* An order was issued requiring respondent to cease and desist from the unfair labor practices found and from "in any like and related manner" restraining or coercing employees in the exercise of their statutory rights. Affirmatively, the order directed respondent to immediately withdraw Markel's grievance and refrain from filing any similar grievance, and to post an appropriate notice. The Board affirmed the decision pro forma.

### B. No. 84-5428 (*Local 1131*)

On March 6, 1981, Universal Engineering Division, Houdaille Industries, Inc. (the

---

**1.** *See NLRB v. Niagara Machine & Tool Works,* 746 F.2d 143 (2d Cir.1984); *Local 1384, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW v. NLRB,* 756 F.2d 482 (7th Cir.1985); *NLRB v. Ensign Electric Division of Harvey Hubble, Inc.,* 767 F.2d 1100 (4th Cir.1985).

"Employer"), and respondent Union Local 1131 entered into a collective-bargaining agreement with respect to the Employer's production and maintenance workers. Article 5, section 21, of the agreement stated:

> The President, Vice-president, Financial Secretary, Recording Secretary and the trustees of the Local Union, members of the bargaining committee and District Stewards on all shifts shall carry top seniority during the terms of office, and, upon completing their term of office, shall revert to their former standing in their seniority list.

In June, 1980, a production and maintenance employee, Tommy Thurman, was elected financial secretary of respondent. On March 15, 1982, the Employer notified the five least senior turret lathe "A" machinists, including Thurman, that they would be laid off as of March 19, 1982. Immediately after receiving his layoff notice, Thurman filed a grievance claiming that, as respondent's financial secretary, he was entitled to superseniority under the contractual provision. On March 16, 1982, the Employer retracted Mr. Thurman's layoff notice and issued a layoff notice to Lester Bender, the sixth least senior turret lathe "A" machinist. Upon receiving his layoff notice, Bender filed a grievance claiming that the grant of superseniority to the financial secretary violated federal law. On March 17, 1982, the Employer retracted Bender's layoff notice, reissued a layoff notice to Thurman and on April 30, 1982, filed an unfair labor practice charge.

After a hearing, the ALJ found that Thurman's functions as the financial secretary were not sufficiently related to on-the-job contract administration as to justify being accorded superseniority under the test enunciated in *Gulton.* The ALJ ordered respondent to cease and desist from the unfair labor practices found and from "in any like or related manner" restraining or coercing employees in the exercise of their statutory rights. Affirmatively, the order requires respondent to post appropriate notices. The Board affirmed the decision pro forma.

## II.

Section 7 of the Act guarantees employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection," and "the right to refrain from any or all such activities...." 29 U.S.C. § 157. Section 8(b)(1)(A) of the Act makes it an unfair labor practice for a labor organization to "restrain or coerce" employees in the exercise of their section 7 rights. 29 U.S.C. § 158(b)(1)(A). Section 8(b)(2) makes it an unfair labor practice for a labor organization "to cause or attempt to cause" an employer to discriminate against an employee in violation of section 8(a)(3). 29 U.S.C. § 158(b)(2). "The policy underpinning these provisions is to insulate employees' jobs from their organizational rights in order that they may 'abstain from joining any union without imperiling their livelihood.'" *Local Union No. 948, International Brotherhood of Electrical Workers v. NLRB,* 697 F.2d 113, 116 (6th Cir. 1982) (quoting *Radio Officers' Union v. NLRB,* 347 U.S. 17, 40, 74 S.Ct. 323, 335, 98 L.Ed. 455 (1954)).

In *Dairylea Cooperative, Inc.,* 219 N.L.R.B. 656 (1975), *enforced sub nom. NLRB v. Milk Drivers and Dairy Employees, Local 338,* 531 F.2d 1162 (2d Cir.1976), the Board first considered whether superseniority provisions unlawfully discriminate against section 7 rights. In that case, the Board addressed the validity of a contract provision granting the union-selected steward preferential seniority not only with respect to layoff and recall, but also for overtime, vacations, and scheduling routes and times. The Board found that the union violated sections 8(b)(1)(A) and 8(b)(2) of the Act by maintaining, enforcing and applying the contract provision because of its discriminatory effect in linking job benefits to union activities. 219 N.L.R.B. at 658. The Board reasoned that while contractual provisions granting superseniority to stew-

ards with respect to layoff and recall were lawful, more expansive clauses granting superseniority to stewards for all purposes were presumptively unlawful subject to proof by the party urging its legality to show that the clause is justified by a legitimate statutory purpose. *Id.*

In 1977, the Board addressed the question of whether superseniority for layoff and recall could be extended to union officials other than stewards. *United Electrical, Radio and Machine Workers of America, Local 623 (Limpco)*, 230 N.L.R.B. 406 (1977), *enforced sub nom. D'Amico v. NLRB*, 582 F.2d 820 (3d Cir.1978). The officer in *Limpco* was the Local Union's recording secretary, who had no official grievance adjustment or on-the-job contract administration obligations, although she did participate informally in such activities. The *Limpco* decision was by aggregate majority with two Board members deciding that superseniority regarding layoff and recall is presumptively lawful where the "official responsibilities of the union officer in question bear a direct relationship to the effective and efficient representation of unit employees...." 230 N.L.R.B. at 408. One Board member limited the presumption of legality to superseniority for union officials "whose functions relate in general to furthering the bargaining relationship." 230 N.L.R.B. at 408 n. 12 (Murphy, concurring). Two Board members dissented, concluding that "the only proper objective of superseniority is to retain those union officials responsible for the processing of grievances on the job, and whose presence on the job is therefore required for the proper performance of this function." 230 N.L.R.B. at 409 (Jenkins & Penello, dissenting).

In *American Can Co.*, 244 N.L.R.B. 736 (1979), *enforced*, 658 F.2d 746 (10th Cir. 1981), the Board, again by an aggregate majority, held unlawful a layoff preference for a union trustee and a union guard. Two members concluded that the involved superseniority clause was unlawful on its face because it "applie[d] to all union officers without regard to whether they act[ed] as stewards." 244 N.L.R.B. at 739 (Jen-

kins & Penello, concurring). One member found the clause lawful on its face, but concluded that the General Counsel had met its burden to prove that the application of the clause to the particular officers in question did not further the bargaining relationship. 244 N.L.R.B. at 740 (Murphy, concurring). Two dissenting members would have found that superseniority provisions for any union official "which are duly negotiated by the parties and contained in their bargaining agreement are presumptively lawful." 244 N.L.R.B. at 740 (Fanning & Truesdale, dissenting).

In *Gulton*, the Board unanimously overruled *Limpco* and *American Can*, adopting the view of the *Limpco* dissent that allowing job rights and union activities to be linked in order to promote effective and efficient union representation unlawfully discriminates against employee rights. At issue in *Gulton* was a clause granting superseniority with respect to layoff and recall to a number of union officials including a recording secretary and a financial secretary. The Board unanimously held that it would find lawful "only those superseniority provisions limited to employees who, as agents of the union, must be on the job to accomplish their duties directly related to administering the collective-bargaining agreement." 266 N.L.R.B. at 409. The Board reasoned that superseniority for union officials is contrary to section 7's guarantee of a separation between employment terms and union activity. Consequently, the discrimination against section 7 rights inherent in superseniority provisions can only be justified where the union officials must "maintain an on-the-job presence" in order to carry out their functions. Further, the Board explicitly rejected the proposition that superseniority for union officials, other than stewards, is justified because it helps to maintain an effective and efficient bargaining relationship. "[A]n officer's continued employment within the unit is not determinative of a union's ability to administer a collective-bargaining agreement. Merely because an officer is laid off does not compel his or her renunciation of

union responsibilities." *Id.* Finally, the Board concluded that continuity in office is not a sufficient interest to warrant a "blanket conveyance of superseniority" to all union officials. *Id.*

As earlier stated, the D.C. Circuit granted enforcement of the Board's decision in *Gulton.* In *Local 900,* the court indicated that while it might not have reached the same conclusion in the first instance, the Board's resolution was reasonable and consistent with the policies underlying the Act, and emphasized that substantial deference must be paid to the decisions of the Board, stating: "We will not substitute our judgment on a question of policy when four members of the Board have brought their expert knowledge of labor relations to bear and have reached a unanimous conclusion." 727 F.2d at 1189.

Three other courts of appeals have enforced the *Gulton* rule. In *NLRB v. Niagara Machine & Tool Workers,* 746 F.2d 143 (2d Cir.1984), the court stated that the Board's decisions must be deferred to if they are reasonably defensible. The court wrote that, "given the Board's experience, it is ordinarily better equipped than we are to determine what circumstances constitute adequate justification for the discrimination inherent in the granting of superseniority." 746 F.2d at 148–49. Similarly, in *Local 1384, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW v. NLRB,* 756 F.2d 482 (7th Cir.1985), the court, noting that decisions of the Board effectuating national labor policy are subject to only "limited judicial review," found the *Gulton* rule reasonable and entirely consistent with the policies of the Act. Most recently, the Fourth Circuit determined that the *Gulton* rule is reasonable and granted its enforcement. *NLRB v. Ensign Electric Division of Harvey Hubble, Inc.,* 767 F.2d 1100, 1103 (4th Cir.1985).

Before analyzing the propriety of the *Gulton* rule, it is important to stress that the scope of our review is quite limited. The Supreme Court has held that the Board is entitled to substantial deference on questions of law involving interpretations of the Act. In *Beth Israel Hospital v. NLRB,* 437 U.S. 483, 98 S.Ct. 2463, 57 L.Ed.2d 370 (1978), the Court stressed that:

> It is the Board on which Congress conferred the authority to develop and apply fundamental national labor policy.... The function of striking [the balance between conflicting legitimate interests] to effectuate national labor policy is often a difficult and delicate responsibility, which Congress committed primarily to the [Board] subject to limited judicial review.

437 U.S. at 500–01, 98 S.Ct. at 2473. *See also Ford Motor Co. v. NLRB,* 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979) (when the Board's construction of the Act is "reasonably defensible, it should not be rejected merely because the court might prefer another view of the statute"). Moreover, this court has stated that "we are not free to substitute our judgment for that of the Board simply because we would have made a different decision had we heard the case *de novo....*" *NLRB v. Pipefitters Union Local No. 120,* 719 F.2d 178, 181 (6th Cir.1983).

Turning to the propriety of the rule in *Gulton,* we are of the opinion that it is well within the broad discretion which the Board has to determine what circumstances will constitute adequate justification for the discrimination inherent in any award of superseniority. As the Board noted in *Gulton,* the need to have a union representative on the job to afford immediate attention to the employees' on-the-job problems is sufficiently compelling to permit job-retention seniority for those who perform steward-like functions. 266 N.L.R.B. at 408. Where, however, a union official's duties do not involve on-the-job responsibilities, there is no comparable reason to award the official preferential seniority at the expense of the employees' section 7 rights.

The respondents contend that preferential seniority is necessary to promote efficient and effective union representation. However, that justification is so broad that

it could be used to sanction virtually any impairment of employee rights. As the Second Circuit noted in enforcing the Board's holding in *Dairylea:* "The policy of §§ 8(a)(3) and 8(b)(2) is to insulate employees' jobs from their organization rights.... For the Union to employ job related benefits to maintain its own organization would, thus, fly in the face of this statutory purpose." 531 F.2d at 1166–67 (citation omitted). Moreover, as the Board noted in *Gulton,* it is the responsibility of the Union "to build and maintain its own organization." 266 N.L.R.B. at 408. The union has at its disposal means other than superseniority, such as the payment of money or non-job benefits, to accomplish this objective. *Id.* Accordingly, we agree with the following language of the court in *Local 900:*

> [W]e must uphold defensible Board decisions, regardless of how we might have decided the matter in the first instance.... [The Board] surely has arrived at one reasonable resolution of the problem in a reasonable manner. We will not substitute our judgment on a question of policy when four members of the Board have brought their expert knowledge of labor relations to bear and have reached a unanimous conclusion.

727 F.2d at 1189 (citation omitted).

The Supreme Court's decision in *NLRB v. Great Dane Trailers, Inc.,* 388 U.S. 26, 87 S.Ct. 1792, 18 L.Ed.2d 1027 (1967), does not militate in favor of a contrary result. In *Great Dane,* the Court divided discriminatory conduct by employers into two categories: (1) conduct so inherently destructive of employee interests that the burden is on the employer to prove that its action was actually motivated by legitimate and substantial business justifications, and (2) conduct of which the harm to employee interests is comparatively slight. In this latter category the employer has the burden of coming forward with evidence of legitimate and substantial business justifications, whereupon the burden shifts to the Board to prove anti-union motivation. 388 U.S. at 33–35, 87 S.Ct. at 1797–98. The respondents would apply the same analysis

when their conduct is challenged under section 8(b)(2), except that the union, rather than the employer, would have the burden of showing legitimate and substantial business justifications.

The respondents contend that preferential seniority for non-steward union officials is not so inherently destructive of important employee rights that it should be held unlawful in spite of legitimate justifications. In *Local 1384,* the court disagreed with this same argument, finding the *Gulton* rule to be "entirely compatible" with *Great Dane.* 756 F.2d at 494. The court reasoned that a determination by the Board that superseniority provisions are inherently destructive of section 7 rights would not be "irrational or contrary to the Act." Furthermore, the court concluded that "it would not necessarily be irrational or contrary to the Act for the Board to find that the only legitimate business purpose that is sufficiently substantial to justify a superseniority preference is that the preference is necessary to enable the employee to be on the job to carry out contract administration duties that require his presence on the job." *Id.* Since the result in *Gulton* may be reached through proper application of the *Great Dane* test, *Great Dane* does not dictate a different result.

Nor do we believe the Supreme Court's decision in *Ellis v. Brotherhood of Railway, Airline and Steamship Clerks,* 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984), requires a different result. In *Ellis* the Court was confronted with the problem of what union activities dissenting employees could be required to finance under a statutorily sanctioned compulsory dues arrangement between a union and an employer. The Court held that by permitting such arrangements in order to eliminate free riders, Congress intended to authorize payment of "not only the direct costs of negotiating and administering a collective-bargaining contract and of settling grievances and disputes, but also the expenses of activities or undertakings normally or reasonably employed to implement or effectuate the duties of the union as exclusive repre-

sentative of the employees in the bargaining unit." 104 S.Ct. at 1892. Applying this standard, the Court concluded that the objecting employees could be compelled to pay for such things as union conventions, social activities, publications, and certain litigation expenses but not organizing expenses. 104 S.Ct. at 1892–95.

In our opinion *Ellis* is inapposite to the instant case. *Ellis* involved specific legislation designed to eliminate the problem of employees who receive the benefit of union representation but are unwilling to contribute their share of financial support to the union. This legislation, the Court observed in *Radio Officers' Union v. NLRB*, 347 U.S. 17, 40, 74 S.Ct. 323, 335, 98 L.Ed. 455 (1954), constitutes the "only limitation Congress has chosen to impose" on the right of employees to "join unions, be good, bad, or indifferent members...." In contrast, Congress has not legislated in the area of superseniority clauses, but has left the matter up to the discretion of the Board.

Finally, respondents contend that the Supreme Court's decision in *Aeronautical Industrial District Lodge 727 v. Campbell*, 337 U.S. 521, 69 S.Ct. 1287, 93 L.Ed. 1513 (1949), compels us to refuse enforcement of *Gulton*. In *Campbell*, the Supreme Court held that the Selective Service Act, which required employers to return a veteran to the same position he held prior to entering military service "without loss of seniority" did not render unlawful a clause in the collective-bargaining agreement providing for superseniority for "union chairmen" over veterans in case of layoff. 337 U.S. at 527–29, 69 S.Ct. at 1290–91. However, as the court noted in *Niagara Machine*, *Campbell* was not decided in the context of an alleged violation of section 7. The Selective Service Act was designed essentially to protect a veteran from job disadvantages because of his service in the Armed Forces. *See Fishgold v. Sullivan Corp.*, 328 U.S. 275, 284, 66 S.Ct. 1105, 1110, 90 L.Ed. 1230 (1946). On the other hand, section 7 is designed to protect an employee

from job disadvantages because of his union membership or lack of it. The Board's finding of an unfair labor practice under the facts of these cases is therefore entitled to enforcement regardless of how the cases might be resolved under the Selective Service Act. *See Niagara Machine*, 746 F.2d at 149; *Local 1384*, 756 F.2d at 488 n. 9.

### III.

#### A.

None of the respondents' remaining arguments require a different result.[2] Respondents, relying on *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 103 S.Ct. 1467, 75 L.Ed.2d 387 (1983), urge that contractual superseniority clauses constitute a valid waiver of the employees' statutory right to challenge the clause. In *Metropolitan Edison* the court held that through a contractual provision a union may waive the right of union officials to refrain from taking affirmative action to terminate unlawful strikes. The court wrote:

> This court long has recognized that a union may waive a member's statutorily protected rights including "his right to strike during the contract term, and his right to refuse to cross a lawful picket line." ... Such waivers are valid because they "rest on 'the premise of fair representation' and presuppose that the selection of the bargaining representative 'remains free.'" ... Waiver should not undermine these premises. Thus a union may bargain away its members' economic rights, but it may not surrender rights that impair the employees' choice of their bargaining representative.

460 U.S. at 705–06, 103 S.Ct. at 1476. (citations omitted).

▪ Respondents assert that the right of the employees to be free of the burdens imposed on their seniority rights by superseniority for union officials is an economic right and, therefore, subject to waiver.

---

**2.** At oral argument, counsel for Union Local 1131 waived the argument that *Gulton* should

not be applied retroactively. This issue was not raised in the *Union Local 1161* case.

We disagree. Contractual provisions purporting to waive the right of employees to be free of discrimination that encourages participation in union activities will not be given effect. The right of employees not to forfeit job-related benefits because of their decision not to engage in union activity is not an economic right within the *Metropolitan Edison* framework because it is in no way related to the right "to engage in some form of concerted activity, such as a strike, for the purpose of achieving economic advantage." *Local 1384*, 756 F.2d at 494. *See also NLRB v. Magnavox Company*, 415 U.S. 322, 325–26, 94 S.Ct. 1099, 1102, 39 L.Ed.2d 358 (1974) (employees' section 7 rights, unlike those in the economic area, cannot be waived by the employees' collective bargaining representative); *Local 900*, 727 F.2d at 1190 ("The right at stake in the present case ... is not economic, but rather is said to affect employees' choices with regard to their level of participation in union affairs."); *Niagara Machine*, 746 F.2d at 150 ("The right at issue in this case is not some right to normal seniority; it is instead the right to be free of discrimination that encourages union membership."). *Cf. Lodge 743, International Association of Machinists v. United Aircraft Corp.*, 337 F.2d 5, 10 (2d Cir. 1964), *cert. denied*, 380 U.S. 908, 85 S.Ct. 893, 13 L.Ed.2d 797 (1965) ("The right of employees to be free of anti-union discrimination by their employer is generally not waivable."). Accordingly, we conclude that the employees' right to challenge the discrimination found by the Board in this case is not subject to waiver.

**B.**

Respondents' statute of limitations argument must also fail. Section 10(b) of the Act provides in relevant part that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board...." 29 U.S.C. § 160(b). Respondents contend that the unfair labor practices occurred either at negotiation of the superseniority provisions or when the unions' officials acquired superseniority

status. In *Local 1161* and in *Local 1131* (the instant cases), both of these events took place more than six (6) months before the charges were filed.

In *Local Lodge No. 1424 v. NLRB*, 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960), the employer had entered into a collective-bargaining agreement with the local union. The agreement contained a "recognition clause" recognizing the Union as the exclusive bargaining representative for all employees. The agreement also contained a "union security" clause by which all employees were given forty-five (45) days to join the Union. However, the union in *Local Lodge* did not represent a majority of the employees at the time the original agreement was executed. Charges were filed ten (10) and twelve (12) months after the execution of the agreement. Conceding to the Court that the charges as to the contract's execution were barred by section 10(b), the Board nevertheless argued that continued enforcement of the illegal agreement was an unfair labor practice not barred by section 10(b). The Court disagreed, holding that, as a general matter, a contract illegally negotiated and executed more than six (6) months before filing of the charge is beyond reach of the charge and cannot be found unlawful even though the contract is maintained and enforced during the six (6) months preceding the charge. 362 U.S. at 419, 80 S.Ct. at 828.

The Court distinguished two situations: (1) where occurrences within the six-month period constitute, as a substantive matter, unfair labor practices, in which case section 10(b) does not ordinarily bar use of evidence of earlier events to illuminate conduct occurring within the six-month period; and (2) where conduct occurring within the period can be charged to an unfair labor practice only through reliance on an earlier unfair labor practice. 362 U.S. at 416–17, 80 S.Ct. at 826–27. The Court decided that the agreement fell in the latter category because enforcement of the agreement could not constitute an unfair labor practice except by reliance upon the illegality of

the original execution, an event that was time barred by section 10(b). Since the agreement was lawful on its face, its maintenance and enforcement during the six-month time period was insufficient to remove the section 10(b) bar because all the evidence necessary to prove the agreement's illegality concerned events outside the six-month time period. 362 U.S. at 419, 80 S.Ct. at 828.

■ *Local Lodge* makes clear, however, that this principle does not apply to a contract that is "invalid on its face." 362 U.S. at 423, 80 S.Ct. at 830. Where a contract is unlawful on its face, its maintenance and attempted enforcement during the six-month time period will provide the basis for an unfair labor practice charge. *Id.* This is true because all the evidence necessary to prove a violation concerns events occurring within the six-month period.

■ In the instant consolidated cases, the Board found unlawful the maintenance and attempted enforcement of the superseniority provisions during the six-month period. Because the superseniority provisions in the instant cases, *Local 1161* and *Local 1131*, grant superseniority to union officials solely because of their status as union officials, the unlawfulness of the provisions is fully established by their own terms without resort to any other evidence. *American Can*, 244 N.L.R.B. at 739 (Jenkins & Penello, concurring). *See also International Harvester Co.*, 268 N.L.R.B. 966 (1984) ("We find that it is not only the application of overly inclusive superseniority provisions which contravenes the Act, but also the very existence of such agreements discriminates against employees and infringes upon their right to refrain from union activities."); *United States Steel Corp.*, 268 N.L.R.B. 1187 (1984) ("Mere maintenance of an overly broad superseniority provision violates the Act."). Since the clauses at issue in the instant cases are unlawful on their face, they are not protected from challenge by section 10(b). *See Local Lodge*, 362 U.S. at 423, 80 S.Ct. at 830.

Respondents' reliance on the decision of the Fifth Circuit in *NLRB v. Auto Warehousers, Inc.*, 571 F.2d 860 (5th Cir.1978), is misplaced. The issue in *Auto Warehousers* was whether maintenance of a collective bargaining provision that allowed shop stewards to be granted superseniority extending to terms and conditions of employment beyond layoff and recall constituted an unfair labor practice which section 10(b) did not bar. 571 F.2d at 861. Analyzing the issue under the framework announced by the Board in *Dairylea*, the court found that the clause was presumptively invalid, but not unlawful on its face. 571 F.2d at 863. However, the *Gulton* decision abandoned the dichotomy between presumptively invalid and presumptively valid. According superseniority to union officers without regard to whether they perform on-the-job contract administration functions is unlawful because it unjustifiably discriminates against employees for "union-related" reasons. Since the provisions at issue in the instant cases are not presumptively invalid, but rather are unlawful on their face, our decision is not inconsistent with *Auto Warehousers*.

### C.

■ There is also no merit to respondent Union Local 1161's argument that the Board should have deferred the case until completion of the grievance and arbitration proceeding. Under section 10(a) of the Act, 29 U.S.C. § 160(a), the Board is not obligated to defer to contractual-arbitration procedures, and whether the Board will do so in a particular case is within the Board's discretion. *NLRB v. Container Corp. of America*, 649 F.2d 1213, 1215 (6th Cir. 1981); *Newspaper Guild v. NLRB*, 636 F.2d 550, 558–59 (6th Cir.1980). The Board has consistently refused to defer to arbitration where the contractual clause that is the subject of the grievance-arbitration proceeding is itself illegal. *See, e.g., Danielson v. International Organization of Masters, Mates and Pilots, AFL–CIO*, 521 F.2d 747 (2d Cir.1975); *International Union of Operating Engineers, Local 701*,

216 N.L.R.B. 233, 234 (1975), *enforced,* 578 F.2d 841 (9th Cir.1978).

■ In *Danielson,* the court stated that where "the claim is that the [u]nion's effort to enforce an illegal contract provision itself constitutes the alleged unfair labor practice," deferral is inappropriate. 521 F.2d at 754-55. Similarly, in *International Union,* the Board stated that deferral is inappropriate "where the contractual provisions governing the dispute are unlawful on their face...." 216 N.L.R.B. at 234. We conclude that the Board did not abuse its discretion in applying its announced standards for deferral.

### D.

■ Finally, respondent Union Local 1161's contention that the filing of a grievance cannot be the basis of an unfair labor practice charge is unfounded. Contrary to respondent's contention, where, as here, the object of the grievance is to enforce an illegal contractual provision, the Board is fully empowered to enjoin the party from pursuing the grievance. *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 737-38 n. 5, 103 S.Ct. 2161, 2167-68 n. 5, 76 L.Ed.2d 277 (1983) (Board may enjoin "suit that has an objective that is illegal under federal law").

### IV.

For the reasons stated, we grant the Board's petitions to enforce its orders in these consolidated cases.