**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CENTRAL PENNSYLVANIA REGIONAL COUNSEL OF CARPENTERS.**

No. 02–4152.

United States Court of Appeals, Third Circuit.

Argued July 29, 2003.

Decided Aug. 28, 2003.

Ordered Published Dec. 12, 2003.

9. Judge Alito concurs in the judgment for essentially the reasons given by the District Court.

Aileen A. Armstrong, Jeffrey Hirsch [Argued], National Labor Relations Board, Washington, DC, for Petitioner.

Ira H. Weinstock [Argued], Ira H. Weinstock, P.C., Harrisburg, PA, for Respondent.

Before: SCIRICA, Chief Judge, RENDELL and AMBRO, Circuit Judges.

## OPINION OF THE COURT

RENDELL, Circuit Judge.

The National Labor Relations Board ("Board") seeks enforcement of its order issued August 1, 2002, prohibiting the Central Pennsylvania Regional Council of Carpenters ("Union") from attempting to enforce the "anti-dual shop" clause in its collective bargaining agreement with Novinger's, an employer in the construction industry. We have jurisdiction pursuant to 29 U.S.C. § 160(e), and will enforce the Board's order.

Novinger's engages in the installation of drywall or gypsum board walls and ceilings in commercial buildings. It is a wholly-owned subsidiary of Novinger Group, a parent company that, in addition to Novinger's, wholly owns Kelly Systems, another company engaged in commercial drywall construction work. All three companies are Pennsylvania corporations with the same principal place of business, and all are owned and ultimately controlled by their President, James Novinger.

Since 1982, Novinger's and the Union have been parties to collective bargaining agreements—the most recent running from May of 1998 to April of 2003—containing the following provision, which forms the core of the dispute here:

> The employers stipulated that any of their subsidiaries or joint venture to which they may be parties when such subsidiaries or joint venture engage in multiple dwelling, commercial, industrial, or institutional building construction work shall be covered by the terms of this agreement.

In October of 1998, the Union learned that Kelly was not conforming with the terms of the agreement signed by Novinger's. The following month, the Union filed a grievance asserting that Novinger's had violated the above-stated contractual provision by failing to apply the terms of the agreement to Kelly and Novinger Group. After receiving no response from Novinger's, the Union sought arbitration with the American Arbitration Association, and a hearing was scheduled for August 30, 1999.

Throughout 1999, the Union continued to pursue the grievance and prepare for the hearing. In July, they served on Novinger's a subpoena duces tecum; in early August, they sent Novinger's a request for additional information; and in mid-August, they requested that Novinger's accept service for further subpoenas related to the hearing.

Approximately a week before the scheduled hearing (and nine months after the grievance was filed), Novinger's filed an unfair labor practice charge. A Complaint and Notice of Hearing was issued on October 27, 1999, and the grievance hearing was held in abeyance. Novinger's complaint alleged that the above-cited provision of the collective bargaining agreement violated § 8(e) of the National Labor Relations Act ("Act"), which makes it an unfair labor practice "to enter into any contract or agreement, express or implied, whereby [the] employer ... agrees to ... cease

doing business with any other person." 29 U.S.C. § 158(e).

After the parties stipulated to the relevant facts, an Administrative Law Judge ("ALJ") held that the Union had indeed committed an unfair labor practice because the clause at issue was on its face a violation of § 8(e). With minor modifications, a unanimous Board panel adopted the ALJ's order, agreeing that the Union violated § 8(e) by giving effect to and attempting to enforce the unlawful "cease doing business" clause. The Board ordered the Union to cease and desist from attempting to enforce the clause, and to post appropriate notices. The Board now seeks judicial enforcement of its order.

■ Initially, the Union asserts that this dispute primarily involves contract interpretation, and thus argues that the Board should have deferred these issues to the arbitrator. Although the Act allocates to the Board essentially plenary authority to prevent unfair labor practices, *see* 29 U.S.C. § 160(a), in appropriate cases the Board may in its discretion choose to defer to the arbitration process. *See, e.g., Wheeling–Pitt. Steel Corp. v. NLRB,* 618 F.2d 1009, 1015 (3d Cir.1980). In determining whether the Board has abused that discretion, "it is the court's responsibility to ensure that the Board follow[s] its own policies." *NLRB v. Yellow Freight Systems, Inc.,* 930 F.2d 316, 322 (3d Cir.1991).

The Board clearly did not divert from its settled policies in this case. With court approval, the Board has long held that deferral is inappropriate where the underlying charge involves a facial challenge to a contractual provision, or, relatedly, where the attempt to arbitrate a dispute under a particular clause might itself be considered an unfair labor practice. *See, e.g., Local 210, Laborers' Int'l Union of N. Am. v. Labor Relations Div. Associated Gen. Contractors of Am.,* 844 F.2d 69, 74–75 (2d Cir.1988); *NLRB v. Local 1131,* 777 F.2d 1131, 1140 (6th Cir.1985); *Mfg. Woodworkers Ass'n,* 326 N.L.R.B. 321, 321–22, 1998 WL 554504 (1998); *Int'l Org. of Masters, Mates and Pilots, AFL–CIO v. Seatrain Lines,* 220 N.L.R.B. 164, 168, 1975 WL 5937 (1975); *Int'l Union of Operating Eng'rs, Local 701,* 216 N.L.R.B. 233, 234, 1975 WL 5301 (1975), *enf'd,* 578 F.2d 841 (9th Cir.1978). Here, Novinger's charged that the clause in dispute is facially invalid, and that the Union thus violated the Act by reaffirming it. This is precisely the sort of dispute for which deferral is inappropriate. *See, e.g., Mfg. Woodworkers,* 326 N.L.R.B. at 321–22.

■ The Union also maintains that this action was untimely. The Act provides that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made.…" 29 U.S.C. § 160(b). The Union contends that the core of the employer's charge is that the Union violated the Act when it attempted to enforce the disputed clause by filing its grievance, and notes that the charge was brought nine months after the grievance was filed.

In order to establish untimeliness under the Act, the Union "must prove that the factual conclusions of the ALJ were erroneous by convincing us that substantial evidence on the record as a whole does not support the conclusions." *See NLRB v. Pub. Serv. Elec. & Gas Co.,* 157 F.3d 222, 228 (3d Cir.1998). Because § 8(e) makes it an unfair labor practice "to enter into" a "cease doing business" agreement, in order for this action to be timely there must have been an "entering into" within six months of the charge. Crucially, the Board and the courts have long interpreted § 8(e) to prohibit not just the initial execution of the agreement, but subse-

quent reaffirmations as well. Accordingly, "the words 'to enter into' must be interpreted broadly and encompass the concepts of reaffirmation, maintenance, or giving effect to any agreement which is within the scope of Section 8(e)." *Dan McKinney Co.*, 137 N.L.R.B. 649, 654, 1962 WL 16401 (1962); *see also Int'l Ass'n of Bridge Structural and Ornamental Iron Workers,* 328 N.L.R.B. 934, 1999 WL 525876 (1999), *General Truck Drivers, Local 467,* 265 N.L.R.B. 1679, 1982 WL 24157 (1982); *Chicago Dining Room Employees, Cooks & Bartenders Union, Local 42,* 248 N.L.R.B. 604, 1980 WL 11270 (1980); *Bricklayers and Stone Masons Union, Local No. 2,* 224 N.L.R.B. 1021, 1976 WL 7115 (1976), *enf'd,* 562 F.2d 775 (D.C.Cir. 1977); *Seatrain Lines,* 220 N.L.R.B. at 171–72.

Here, the ALJ and the Board concluded that the action was timely because the Union had reaffirmed the disputed clause in the six months preceding the employer's charge by its active pursuit of its grievance, i.e., by serving upon the employer, during the limitations period, a subpoena duces tecum, a request for additional information, and a request to accept service for additional subpoenas. The Union contends that these steps were only "minor ministerial actions" related to its "already filed grievance," and thus did not constitute independent reaffirmations of the clause. We disagree. Each action in support of the Union's grievance was a part or manifestation of its attempt to have the clause enforced. As the Court of Appeals for the D.C. Circuit has noted, when a party is "insisting upon the continued viability and legality of" a provision, as evidenced by "acts of continued enforcement," "it is then appropriate for another party to instigate an unfair labor practice charge in order to resolve a contrary interpretation of the clause which he may entertain." *Bricklayers and Stone Masons Union, Local No. 2 v. NLRB,* 562 F.2d 775, 783 (D.C.Cir.1977) (quotations omitted).

In addition, we have recognized that the Act's limitations period must be applied "in light of the statute's underlying policy," which is " 'is to bar litigation over past events after records have been destroyed, witnesses have gone elsewhere, and recollections of the events in question have become dim and confused.' " *NLRB v. Al Bryant, Inc.,* 711 F.2d 543, 548 (3d Cir. 1983) (quoting *Local Lodge No. 1424, Int'l Ass'n of Machinists v. NLRB,* 362 U.S. 411, 419, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960)). Where, like here, the only issue is the facial validity of a contractual provision, such concerns are not an issue. *See Local 1131,* 777 F.2d at 1140 ("Since the clauses at issue in the instant cases are unlawful on their face, they are not protected from challenge by section 10(b)."); *NLRB v. Manitowoc Eng'g Co.,* 909 F.2d 963, 972 n. 12 (7th Cir.1990). In sum, the Board's conclusion that this action was timely is supported by settled case law and substantial evidence.

The Union next turns to the merits of the Board's unfair labor practice decision, and argues that this clause does not in fact violate § 8(e). Despite the specific statutory reference in § 8(e) to "cease doing business," the provision is designed to prohibit all contracts by which employers essentially agree not to do business or otherwise deal with companies that are not unionized or have not otherwise complied with union standards. *See, e.g., Spectacor Mgmt. Group v. NLRB,* 320 F.3d 385, 390–91 (3d Cir.2003).

■ There is no real dispute in this case that the clause at issue is a "cease doing business" clause as generally contemplated by § 8(e). The law is well-settled, however, that not all such clauses constitute unfair labor practices. We have recently explained:

If the purpose of the agreement is to benefit the employees of the bargaining unit, the agreement is primary and thus lawful, but if its aim is to pressure outside employers to concede to union objectives, the agreement is unlawfully secondary. As the Supreme Court stated in an oft-repeated sentence, the touchstone is whether the agreement or its maintenance is addressed to the labor relations of the contracting employer vis-a-vis his own employees.

[A] lawful work preservation agreement must pass two tests. First, the agreement must seek to preserve work traditionally performed by employees represented by the union. Second, the contracting employer must have the power to give the employees the work in question, which is known as the "right of control" test.

*Spectacor*, 320 F.3d at 391 (citations and quotations omitted).

Here, the ALJ held, and the Board agreed, that the clause was not appropriately limited by its terms, and therefore, evidenced a secondary objective. The Union argues, to the contrary, that the agreement was solely to benefit the employees, and was just "an attempt to keep the employer from doing business in violation of the entire contract with its own alter egos." It urges that the two "tests" are met because the work covered by the agreement is within the scope of work traditionally done by the employees, and because Novinger's has the right of control over Kelly and Novinger Group—the intended targets of the Union's attempted enforcement of the clause—since, it contends, they should all be deemed a single

entity. Relatedly, the Union argues that the "cease doing business" clause does not violate the Act because the entities here are really one, so that there is no "other person" for purposes of § 8(e).

As recognized by the Board, the obvious flaw in the Union's argument is that the question presented here is not whether the clause as applied here violates § 8(e), but, rather, whether the clause is invalid on its face, and we conclude that it is. First, the clause extends well beyond the work historically performed by the employees, covering all "multiple dwelling, commercial, industrial, or institutional building construction work." Second, it is not restricted by its terms to apply only to those entities over which Novinger's has the right of control; instead, it applies broadly to all subsidiaries or joint ventures. In short, it violates both prongs of the test.[1]

Where a clause violates § 8(e), it is "unenforceable and void." 29 U.S.C. § 158(e). We must therefore refuse the Union's invitation to overlook the clause's facial invalidity. It is irrelevant that some potential applications of the clause might not be violations of the Act; the problem is that the clause is overbroad, a "generally applicable" failure rendering the clause "per se invalid." *Spectacor*, 320 F.3d at 392; *see also, e.g., Bricklayers*, 224 N.L.R.B. at 1025 ("[E]ven if we were to find, arguendo, that Respondents were attempting to have the clauses interpreted and applied in a lawful and restricted manner before the arbitrator, it would not change the fact that the clauses originally entered into are overly broad on their face."), *enf'd*, 562 F.2d 775 (D.C.Cir.1977).

---

1. The Union relies heavily on *Manganaro Corp.*, 321 N.L.R.B. 158, 1996 WL 251866 (1996), in which the Board upheld a clause against a § 8(e) challenge. The clause at issue there, however, was *very* unlike the one at issue here, expressly limiting its applicability to "construction work of the same type covered by th[e] Agreement," and to other entities over which the company "exercised management, control or majority ownership." *Id.* at 161–62; *see also, e.g., Mfg. Woodworkers*, 326 N.L.R.B. at 324–27.

The Union's final argument is that, even if the agreement violates § 8(e), it is saved by the "construction industry proviso," which exempts certain secondary agreements made in the construction industry from invalidation under the Act. The proviso states: "[N]othing in [§ 8(e)] shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of construction, alteration, painting, or repair of a building, structure, or other work." 29 U.S.C. § 158(e).

The ALJ and Board held that the disputed clause is not saved by the proviso because it is not limited to the "contracting or subcontracting of work to be done at the site of construction," but, instead, purports to cover all construction work done by subsidiaries and joint ventures of the company. Relying heavily on a single ambiguous comment in the legislative history, the Union argues that the Board's interpretation of the proviso's scope is unduly constrained. Our review is solely to ensure that the Board's construction of the statute is a reasonable one. *See, e.g., Spectacor*, 320 F.3d at 396.

In *Alessio Construction*, 310 N.L.R.B. 1023, 1993 WL 104853 (1993), the Board thoroughly analyzed and persuasively rejected the types of arguments put forth by the Union in the present action, concluding that the proviso does not protect broad anti-dual shop clauses like the one at issue here. The Board's construction of the proviso accords well with the statute's plain text and history, and we certainly cannot conclude that it represented an unreasonable interpretation of the Act. *Id.* at 1026–29; *see also, e.g., Local 210*, 844 F.2d at 76 (noting that the secondary agreements contemplated by the proviso "might take the form of union-signatory clauses, in which an employer agreed not to subcontract work to any part that was not a signatory to the contract, or union-standards clauses, in which an employer agreed not to subcontract work to any party unless" they complied with the contract (citations omitted)). *See generally Spectacor*, 320 F.3d at 394 (noting that by enacting the proviso "Congress wished to preserve the status quo regarding agreements between unions and contractors in the construction industry" and ultimately deferring to the Board's interpretation of the proviso). Indeed, we can find no support for the Union's position that this expansive provision simply "relat[ed] to the contracting or subcontracting of work to be done at the site of construction." 29 U.S.C. § 158(e). The Board correctly concluded that this clause was not saved by the construction industry proviso.

Accordingly, the Board did not err, and we will affirm.