**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DISTRICT COUNCIL NO. 16 OF THE
INTERNATIONAL UNION OF PAINTERS
& ALLIED TRADES, GLAZIERS,
ARCHITECTURAL METAL & GLASS
WORKERS, LOCAL 1621,
　　　　　　*Plaintiff-Appellant,*

　　　　v.

B & B GLASS, INC.,
　　　　　　*Defendant-Appellee.*

No. 05-16258

D.C. No.
CV-04-01219-VRW

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the Northern District of California
Vaughn R. Walker, District Judge, Presiding

Argued and Submitted
June 13, 2007—San Francisco, California

Filed August 16, 2007
Amended December 11, 2007

Before: Mary M. Schroeder, William C. Canby, Jr. and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge Schroeder

16261

## COUNSEL

David A. Rosenfeld and Emily P. Rich, Weinberg, Roger & Rosenfeld, Alameda, California, for the plaintiff-appellant.

Charles S. Birenbuam, Joan B. Tucker Fife, and Robert Spagat, Winston & Strawn, LLP, San Francisco, California, for the defendant-appellee.

## ORDER

The opinion filed on August 16, 2007 is hereby amended as follows. On page 9950, the first full paragraph is deleted and the following paragraph is substituted:

Section 8(e) of the NLRA "generally prohibits those collective-bargaining agreements which require employers to cease doing business with any other person." *Manganaro*, 321 N.L.R.B. at 163. The Supreme Court has held that certain agreements between employers and labor organizations whose aim is to preserve the jobs of covered employees are not within the prohibitions of § 8(e). *Nat'l Woodwork Mf'rs Ass'n v. NLRB*, 386 U.S. 612, 646 (1967). Only where a work preservation provision is " 'tactically calculated' " to further union objectives other than preservation of bargaining unit

work is § 8(e) violated. *NLRB v. Int'l Longshoremen's Ass'n AFL-CIO*, 447 U.S. 490, 504-05 (1980) (quoting *Nat'l Woodwork*, 386 U.S. at 644) (provisions designed to achieve objectives other than preservation of bargaining unit work constitute "secondary" activity and, therefore, are unlawful).

On page 9952, in the first paragraph, the following language is deleted:

Because the only employees covered by the Texas CBA are members of Local 53, the district court determined that only the employees of Local 53 are protected by the clause.

Substitute the following language:

Because the only employees covered by the Texas CBA are employees represented by Local 53, the district court determined that only employees represented by Local 53 are protected by the clause.

The mandate shall issue forthwith. No petitions shall be entertained.

---

## OPINION

SCHROEDER, Circuit Judge:

This construction industry labor litigation involves the interplay between the use of standard "work preservation" and "out-of-area" clauses in collective bargaining agreements and the strong federal policy favoring arbitration. The clauses at issue in this litigation appear in a collective bargaining agreement signed by a Texas corporation, but a different company in California performed the challenged work. The California union seeking arbitration did not sign an agreement with the company doing the work. We conclude, as did the district

court, that because the plaintiff union has no agreement with the employer that it seeks to take to arbitration, and it cannot show that the employer against whom it filed its claim controls the company doing the work in California, the employer is entitled to judgment. We therefore affirm.

## Background

Plaintiff-Appellant is District Council No. 16 of the International Union of Painters and Allied Trades, Glaziers, Architectural Metal and Glass Workers, Local 1621 ("Local 1621" or the "union"). It is located in Northern California and is signatory to a collective bargaining agreement ("CBA") with contractors in Santa Clara County. The union filed this action in the Northern District of California in 2004 against Defendant-Appellee B&B Glass, Inc., a Texas corporation ("BBTX"). The union seeks to compel BBTX to arbitrate the union's claim that another corporation, B&B Glass, Incorporated, an Arizona company ("BBAZ"), violated the Texas agreement BBTX signed with Local 1621's Texas counterpart, Painters and Glaziers Local Union No. 53 ("Local 53"). The California dispute concerned work BBAZ was doing at San Jose State University in Santa Clara County.

BBTX appeared specially to contest the district court's personal jurisdiction over it, asserting that it was not doing the work in California and therefore was not present in the state. In support of its assertion, BBTX provided declarations that the persons controlling BBTX had no control over BBAZ's business decisions. Without producing additional evidence, Local 1621 countered that, because BBTX and BBAZ had a majority of shareholders in common, BBTX exercised sufficient management control over BBAZ that the court should compel arbitration of the dispute between Local 1621 and BBTX.

In granting BBTX's motion to dismiss, the district court relied on the following undisputed facts. BBAZ was formed

in 1973 as an Arizona corporation by Robert and Barbara Buckholz. Their son, Bryan Buckholz, purchased the company in 1983. He now owns a 25% interest in BBAZ, with the other 75% being owned by Rick Churchill, Bernie Hagerman, and John Collier, equally. BBAZ conducts most of its business in Arizona, with some in California, Utah and New Mexico. It does not hire employees who are unionized. Bryan Buckholz incorporated BBTX under the laws of Texas in 1998, and he subsequently sold his entire interest in BBTX to Rick Churchill, Bernie Hagerman, and John Collier. BBTX is a union shop.

BBAZ and BBTX do not compete for projects, contracts, subcontracts or bids. The companies do not share business offices, phone numbers, mailing addresses, business licenses, employees, supervisors, managers, payrolls, workers compensation policies, tax identification numbers, state unemployment numbers, tax records, corporate records or bank accounts. Importantly, each company has a different "Operation Manager"—the person responsible for bidding on and negotiating work contracts for the company.

In March 2002, Rick Churchill, the Operation Manager of BBTX, signed the Texas CBA. In July 2002, Plaintiff Local 1621 entered into a CBA with various employers in fourteen Northern California counties, including Santa Clara County, in which San Jose State University is located. BBAZ began its work at San Jose State in July 2003.

In March 2004, this dispute arose between BBTX and Local 1621. Local 1621 claimed that BBAZ's work in California violated the Texas CBA. The terms of the Texas CBA, if applicable to the California work, would bind BBAZ, through BBTX, to adhere to the terms of the California CBA. The California CBA provides that any dispute between the parties is to be resolved through a grievance procedure, the final step of which is binding arbitration. On March 26, 2004, Local 1621 filed its petition to compel arbitration with BBTX

in the Northern District of California. Local 1621 contends that the California CBA applies to BBAZ's California work through the Texas CBA, because BBTX's three owners also own a majority of shares of BBAZ. Therefore, Local 1621 contends, BBAZ's work is the out-of-area work of BBTX.

The out-of-area clause in the Texas CBA requires BBTX, when engaged in work outside the area covered by the agreement, to abide by the terms of the agreement in effect in that other area. It states the employer must

> comply with all the lawful clauses of the Collective Bargaining Agreement in effect in said other geographic jurisdiction and executed by the employers of the industry and affiliated Local Unions in that jurisdiction[.] This provision is enforceable by the Local Union or District Council in whose jurisdiction the work is being performed, both through the procedure for settlement of grievances set forth in its applicable Collective Bargaining Agreement and through the courts, and is also enforceable by the Union party to this agreement[.]

Local 1621 first argued to the district court that this clause required BBAZ to comply with the California CBA. The district court properly rejected this argument. As the district court pointed out, "If BBTX physically engages in work outside of the Dallas metropolitan area (i.e., in San Jose, California), BBTX must comply with all of the clauses of the CBA in effect in San Jose . . . . [¶] But BBTX engaged in no work at San Jose State; only BBAZ did so." Therefore, the district court determined that the out-of-area clause was not sufficient to support compelling arbitration.

Local 1621 then invoked the Texas CBA's "*Manganaro*" clause. A *Manganaro* clause, also known as a work preservation provision, is common practice in the construction industry. *Painters & Allied Trades Dist. Council No. 51 of the Int'l*

*Brotherhood of Painters and Allied Trades, AFL-CIO*, 321 N.L.R.B. 158, 158 (1996) ("*Manganaro*"). It is designed to prevent union contractors from acting directly or indirectly as non-union contractors. The Texas CBA's *Manganaro* clause reads:

> To protect and preserve, for the employees covered by this Agreement, all work they [i.e., Union 53 members] have performed, and to prevent any device or subterfuge to avoid protection and preservation of such work, it is agreed as follows: If the Employer performs on-site construction work . . . under its own name or the name of another corporation . . . where in the Employer, through its officers, directors, owners or stockholders, exercises directly or indirectly . . . [m]anagement control or majority ownership, the terms and conditions of this Agreement shall be applicable to all such work.

Local 1621 argued that the Texas CBA bound BBAZ to the terms of the California CBA because BBTX consented to the jurisdiction of the district court when it signed the collective bargaining agreement with Texas Local 53. Local 1621 contended that BBTX "exercised . . . majority ownership" of, and thus controlled, BBAZ's business decisions. Because of the *Manganaro* clause in the Texas CBA, BBAZ was bound by the Texas CBA. Therefore, Local 1621 contended, because BBAZ's work at San Jose State constituted "on-site construction work . . . under the name of another corporation" controlled by BBTX, the out-of-area clause in the Texas CBA covered BBAZ's work in California, subjecting it to the California CBA's arbitration provision.

On June 1, 2005, the district court granted BBTX's motion to dismiss the petition to compel arbitration, finding that the court lacked personal jurisdiction over BBTX. Applying *Manganaro*, the court held that BBTX was not present in San Jose; it had successfully demonstrated that it did not exercise

active control over BBAZ. *See Manganaro*, 321 N.L.R.B. at 164 (requiring that the signatory to one CBA must exercise "actual or active control of the work" of the non-signatory for work preservation provision to apply). The district court found that, although Local 1621 initially presented evidence of the substantial overlap of ownership between the companies, the union did not follow up with additional evidence demonstrating that BBTX had any hand in BBAZ's business decisions. Nor did Local 1621 contradict the companies' showing that different individuals controlled the management of each company.

This timely appeal followed.

## Discussion

Local 1621 contends that the district court improperly held that it was required to establish by a preponderance of the evidence the existence of personal jurisdiction. It asserts that it was required only to make a prima facie showing, and that it did so by virtue of its allegations, in the Petition to Compel Arbitration, that the three owners of BBTX owned a majority of BBAZ, thus giving rise to a presumption that BBTX controlled BBAZ's work.

**[1]** Where, as here, the existence of personal jurisdiction is challenged and the defendant appears specially to contest its presence in the jurisdiction, the plaintiff has the burden to come forward with some evidence to establish jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) ("where a defendant moves to dismiss . . . for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate."). Because the district court ruled on the issue relying only on affidavits and discovery materials without holding an evidentiary hearing, "dismissal is appropriate only if the plaintiff has not made a prima facie showing of personal jurisdiction." *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 588 (9th

Cir. 1996) (internal quotation marks omitted). However, Local 1621 came forward with no evidence that BBTX exercised any control over the work BBAZ was doing in California so as to bring BBTX within the jurisdiction of a California court. The district court properly held that Local 1621 had not borne its burden.

Local 1621, however, argues that the district court's dismissal was improper. It claims that BBTX consented to jurisdiction in California because it is a party to the Texas CBA and the CBA applies to BBAZ's work in California. If the union were correct, the Texas CBA would require that BBAZ adhere to the CBA in effect in Santa Clara County between Local 1621 and various Northern California companies. The out-of-area clause in the Texas CBA does not apply on its face to work done by a company other than BBTX. The union urges, however, that the out-of-area clause, when read in conjunction with the work preservation clause, brings BBAZ's California work within the Texas CBA, because the CBA covers the out-of-area work not only of BBTX but of entities over which BBTX "exercises Management Control, or majority ownership[.]" To demonstrate the requisite control, Local 1621 relied only on the common ownership of BBTX and BBAZ. The district court found this overlap of ownership was not sufficient in the face of the evidence in the record. We agree.

[2] The Texas CBA binds the "Employer party" to "comply with all lawful clauses of" any CBA in effect in any other "geographic jurisdiction" in which it does work. Out-of-area clauses such as the one at issue here are enforceable in the Ninth Circuit. *See McKinstry Co. v. Sheet Metal Workers' Int'l Ass'n, Local Union No. 16*, 859 F.2d 1382, 1389 (9th Cir. 1988) (approving out-of-area clause because such clauses are common in construction industry and were contemplated by the drafters of § 8(e) of the NLRA). As the district court observed, had BBTX been doing the California work, it certainly would have been required to "comply with all of the

clauses of the CBA in effect in San Jose between San Jose employers and the affiliated local union, (e.g. Local 1621)." But BBTX did not do the work in California. Therefore, the out-of-area clause in the Texas CBA is insufficient, in and of itself, to establish personal jurisdiction over BBAZ.

**[3]** The out-of-area clause also fails to establish jurisdiction when read in tandem with the work preservation clause. The work preservation, or *Manganaro*, clause is prevalent in construction industry CBAs. The clause takes its name from the NLRB case that first analyzed an agreement clause containing materially the same language used in the Texas CBA here. *See* 321 N.L.R.B. 158 (1996).

**[4]** In *Manganaro*, a proposed CBA between Manganaro Corporation and a local union contained a work preservation clause identical in all material aspects to the clause in the Texas CBA. Manganaro filed an unfair labor practice claim, charging that the clause violated, *inter alia*, § 8(e) of the NLRA. *Id.* at 159. The NLRB found the clause "not unlawful on its face[,]" *id.* at 163-68, and also held that application of the clause was "not triggered merely by the fact of an affiliation, subsidiary and parent relationship, or ownership interest short of majority ownership," *id.* at 164-65. It went on to interpret "majority ownership" as applying only where the shareholders of the signatory through the non-signatory company, "perform[ ] and exercise[ ] control over the work" in question. *Id.* at 165 (emphasis omitted).

**[5]** Local 1621 urges that BBAZ's work in California presents "exactly the scenario" the language the Board approved in *Manganaro* was designed to prevent. It contends BBTX is effectively subcontracting work to BBAZ in order to circumvent the strictures of the Texas CBA. But, as the district court found, this case does not present the scenario the *Manganaro* language sought to prevent. Local 1621 presented the district court with no evidence that BBTX exercises any control over BBAZ's decisions. Indeed, undermining Local 1621's argu-

ment, BBTX offered significant evidence that there is no overlap between the management and operations of the two companies. The companies do not operate in the same market and they do not bid on the same projects. They do not share offices, employees, records, or any other business nexus. They are not managed by the same individuals. Because Local 1621 failed to present any evidence of actual control, the district court properly determined that application of the Texas CBA's work preservation clause to BBAZ's California work would have a secondary effect unlawful under § 8(e) of the NLRA.

[6] Section 8(e) of the NLRA "generally prohibits those collective-bargaining agreements which require employers to cease doing business with any other person." *Manganaro*, 321 N.L.R.B. at 163. The Supreme Court has held that certain agreements between employers and labor organizations whose aim is to preserve the jobs of covered employees are not within the prohibitions of § 8(e). *Nat'l Woodwork Mf'rs Ass'n v. NLRB*, 386 U.S. 612, 646 (1967). Only where a work preservation provision is " 'tactically calculated' " to further union objectives other than preservation of bargaining unit work is § 8(e) violated. *NLRB v. Int'l Longshoremen's Ass'n AFL-CIO*, 447 U.S. 490, 504-05 (1980) (quoting *Nat'l Woodwork*, 386 U.S. st 644) (provisions designed to achieve objectives other than preservation of bargaining unit work constitute "secondary" activity and, therefore, are unlawful).

[7] The Court in *International Longshoremen's Association* went on to articulate a two-part test for determining whether a CBA provision constitutes a lawful work preservation agreement. First, it said, the clause "must have as its objective the preservation of work traditionally performed by employees represented by the union. Second, the contracting employer must have the power to give the employees the work in question." *Id.* at 504. This test is known as the "right of control" test. *Id.* The Court's rationale for adopting the second prong of the test was to prevent "contracting employer[s]

[with] no power to assign [or control] the work" from attempting to "influence whoever does have such power over the work." *Id.* at 504-5 (citing *NLRB v. Pipefitters*, 429 U.S. 507, 517 (1977)).

**[8]** In *Manganaro*, the NLRB laid out its assessment of the minimum evidence necessary to meet the "right of control" test. It said that, in order to establish the right of control, and thus shelter a work preservation clause from § 8(e)'s prohibitions, the signatory company must both possess "the right of control over the work in question . . . and exercise[ ] [that] control." *Id.* at 164-65. The Board rejected the Manganaro Corporation's argument that the clause in that case could not pass the "right of control" test because on its face "it could and would apply to separate, though commonly owned, companies over which [Manganaro] ha[d] no power to assign work." *Id.* at 164. The NLRB said:

> the requirement that the signatory contractor exercise "management, control or majority ownership" over another entity presumptively means the contractor has the right or the power to control the assignment of work of that entity's employees. In addition, the clause by its terms states that it applies only if the signatory "exercises" such control. This is more than potential authority; it refers to the actual or active control of the work.

*Id.* at 164.

In this case, the district court began its analysis of the work preservation clause in the Texas CBA by determining that the clause applies only when BBTX is doing work under the name of another company in the Dallas metropolitan area. The provision states that its purpose is to "protect and preserve, for the employees covered by [the Texas CBA], all work they have performed." Because the only employees covered by the Texas CBA are employees represented by Local

53, the district court determined that only employees represented by Local 53 are protected by the clause. Furthermore, the district court said, disputes regarding the work preservation clause are governed by Section 2 of Article XVIII of the Texas CBA. That provision states that "[a]ll charges of violations of Section 1 of this Article shall be considered a dispute and shall be processed in accordance with the provisions of this Agreement on the handling of grievances." Hence, the district court concluded that "any disputes concerning § 1 are governed by the grievance procedures of the Texas CBA, not a foreign CBA."

On appeal, Local 1621 contends, as it must, that the Texas CBA's work preservation clause does apply extraterritorially and that BBTX is violating it in California by virtue of the work BBAZ is doing. The essence of this argument is that the degree of common ownership between BBTX and BBAZ satisfies the "right of control" test laid down by the Supreme Court. Here, however, the union runs up against the *Manganaro* decision itself, in which the majority clearly rejected that view.

**[9]** *Manganaro* is settled law. The NLRB itself recently described it as "current Board law." *In re Cent. Pa. Reg'l Council of Carpenters of the United Brotherhood of Carpenters and Joiners of Am., AFL-CIO*, 337 N.L.R.B. 1030, 1031 n.1 (2002). Our sister circuits have cited it as well and have not had occasion to criticize it. *See NLRB v. Cent. Pa. Reg'l Council of Carpenters*, 352 F.3d 831, 835 n.1 (3d Cir. 2003); *Int'l Union of Painters & Allied Trades, Local Unions No. 970 & 1144 AFL-CIO-CLC v. NLRB*, 309 F.3d 1, 6 (D.C. Cir. 2002). The district court correctly determined that in order to carry its burden of showing that BBTX was subject to the court's jurisdiction, Local 1621 was required to demonstrate that BBTX exercised actual management control over the work being done by BBAZ. Local 1621 failed to meet that burden.

**AFFIRMED.**